833 F.2d 1013
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John L. SCHULER, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 87-5278.
 United States Court of Appeals, Sixth Circuit.
 Nov. 6, 1987.
 
 Before BOYCE F. MARTIN, Jr., and DAVID A. NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a social security disability case in which an Administrative Law Judge concluded that the claimant was entitled to an award of benefits and the Appeals Council determined that he was not. Under our decision in Mullen v. Bowen, 800 F.2d 535 (6th Cir.1986), the question presented is whether the decision of the Appeals Council was supported by substantial evidence. The district court answered in the affirmative, and we shall do the same.
 
 
 2
 * The claimant initially filed an application for disability benefits on June 18, 1980, asserting that he had been disabled since April 11, 1979, by reason of an "injured right elbow and back injury." An administrative law judge determined, after a hearing, that the claimant was not eligible for benefits. The ALJ found that although the claimant might experience some discomfort and pain that would prevent him from performing his customary employment as a welder, the record did not show that the pain was severe enough to interfere significantly with his ability to concentrate and to carry out basic work related activities. The Appeals Council denied review.
 
 
 3
 On May 3, 1982, the claimant filed a second application for benefits. Like the first, it was based on a back injury. The alleged disability onset date was the same. After a hearing the ALJ reopened the decision on the initial application and filed a new decision awarding benefits. The award was based on the ground that evidence submitted subsequent to the first decision provided objective support for the claims of pain and justified a reclassification of the claimant's residual functional capacity from "light work" to "sedentary work only":
 
 
 4
 "While the original diagnostic studies did not confirm a definite impairment, subsequent studies demonstrate significant disc space narrowing, fourth lumbar disc degeneration, and positive physical examination findings. An electromyelogram was positive in October of 1979, with electrical evidence of mild to moderate lower motor neuron disfunction in the right L-5, S-1 myotomic distribution at or above the root level. Since April 11, 1979 the claimant has been treated intensively for his complaints without improvement despite limitation in activities, medication, and therapy. The claimant's complaints of pain are genuine, reflected in his intensive pursuit of treatment, which included two lumbar myelograms, a discogram, electrical testing, and multiple x-rays. Surgery may be carried out following application of a flexion jacket, which has apparently been deferred due to financial considerations."
 
 
 5
 The Appeals Council reviewed the ALJ's second decision on its own motion and reversed the award of benefits. After considering the claimant's residual functional capacity and his age, education, and past work experience, the Appeals Council concluded that there were a significant number of jobs in the national economy that the claimant could perform. The Appeals Council found that the claimant could lift or carry up to 20 pounds at a time and could frequently lift or carry objects up to 10 pounds; that he had the capacity to stand, walk and sit without limitation; and that he could thus perform light work.
 
 
 6
 The Appeals Council relied on the following evidence in making its determination. The claimant had testified at the hearing that he could probably handle an easy job if he could alternate between sitting and standing and if he took enough pain medication. The claimant's treating physician, Dr. Schiller, noted in September of 1979 that the results of a significant, well handled work-up of claimant had been essentially normal. A lumbar x-ray showed only slight spurring. Dr. Schiller's September 1980 examination indicated that although the claimant's range of motion was somewhat limited, a straight leg raising test was negative and reflexes were normal. The results of an April 1982 myelogram were normal.
 
 
 7
 The Appeals Council also noted that in a letter sent to the claimant's attorney in December of 1982, Dr. Schiller stated that all CAT scan, myelogram, and epidural venogram evaluations were normal. Although a lumbar x-ray showed 50% more narrowing at L4-5 than the 1979 x-ray, Dr. Schiller concluded that the claimant did not have spondylolysis and he doubted the validity of the 1982 discography that indicated a degenerative disc at L-4. The Appeals Council also relied on Dr. Schiller's statement that the claimant's back condition caused a 5% permanent partial impairment to the body as a whole and that there was a high functional overlay in the claimant's symptoms.
 
 
 8
 The state's consulting orthopedic specialist opined in June 1982 that the claimant had the residual functional capacity for light work with limited bending and reaching overhead. The Appeals Council noted that there was a lack of medical or laboratory findings indicating a significant hypertensive condition.
 
 
 9
 The Appeals Council disagreed with the ALJ's determination that the claimant was illiterate, in view of the facts that the claimant had completed seven grades of formal education and that achievement tests placed his reading ability at the 3.4 grade level and his arithmetic ability at the 4.3 grade level. The Appeals Council classified the claimant's educational capacities at the marginal educational level. The claimant was 50 years old, which put him in the "approaching advanced age" category. Applying the "grids," the Appeals Council concluded that the claimant was not disabled.
 
 
 10
 The claimant brought suit in federal court, and the case was referred to a magistrate. Following the reasoning of this court in Newsome v. Secretary of Health and Human Services, 753 F.2d 44, 46 (6th Cir.1985), the magistrate concluded that the claimant was entitled to benefits because there was substantial evidence supporting the ALJ's decision. After this court's en banc decision in Mullen v. Bowen, 800 F.2d 535 (6th Cir.1986), which reversed Newsome, the district court concluded that substantial evidence supported the decision of the Appeals Council. Summary judgment was accordingly entered in favor of the Secretary.
 
 
 11
 Upon appeal the claimant advances three reasons why this court should reverse the district court's decision. First, he argues that the Appeals Council could not reverse the ALJ's specific finding that the complaints of pain were credible. Second, he contends the Appeals Council's determination that he has a marginal education is not supported by substantial evidence. Third, he argues that the Appeals Council could not apply the grid because he had non-exertional limitations of which the grid took no account.
 
 II
 
 12
 In Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986), this court held that the ALJ's credibility determination is one of several factors to be considered in determining whether the Appeals Council's decision is supported by substantial evidence:
 
 
 13
 "As we stated in Beavers, supra, 'this court still has the responsibility of determining whether there is substantial evidence to support the Appeals Council's decisions, and when the administrative law judge has concluded that a witness' testimony is credible, that is an important factor to consider.' 577 F.2d at 386-87. Indeed, '[t]he opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly.' Id. at 387. Any judicial determination of whether the Appeals Council's decision is supported by substantial evidence must necessarily take into consideration 'the record as a whole,' including 'whatever in the record fairly detracts from its weight.' Universal Camera Corp., 340 U.S. at 488, 71 S.Ct. at 464. This is not to suggest, however, that the Appeals Council must offer any special justification for its contrary findings other than that which has always been required in this kind of proceedings."
 
 
 14
 In order to prove disabling pain, the objective medical evidence (1) must confirm an underlying medical condition and (2) must either confirm the severity of the alleged pain or show the presence of a medical condition that is of such severity that it can reasonably be expected to produce the disabling pain. Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.1986); see also 20 C.F.R. Sec. 404.1529. The Secretary concedes that plaintiff has an underlying medical condition that would cause him pain. However, for the reasons noted in the Appeals Council's decision, there is substantial evidence to support its decision that the objective medical evidence does not confirm the severity of the alleged pain.
 
 III
 
 15
 20 C.F.R. Sec. 404.1564 defines illiteracy and marginal education thus:
 
 
 16
 "(1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
 
 
 17
 (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education."
 
 
 18
 Claimant's seven years of formal schooling and his achievement test results provide substantial evidence for the Appeals Council's finding that claimant has a marginal educational capacity.
 
 IV
 
 19
 In Kirk v. Secretary of Health and Human Services, 667 F.2d 524 (6th Cir.1981), this court stated that testimony of a vocational expert will be needed if no category in the grid matches the claimant's characteristics. Claimant argues that he has certain non-exertional impairments that would prevent mechanical application of the grid guidelines. See 20 C.F.R. Part 404, Subpt. B, Appendix 2, Sec. 200.00.
 
 
 20
 In particular, claimant alleges that he has the non-exertional limitations of pain and a psychological impairment. He argues:
 
 
 21
 "Claimant testified to numbness in the right hand and pain when he sits for a long period of time. He also testified as to muscle cramping in his legs as well as a burning sensation in his right shoulder. The pain that he experiences while sitting is such that he feels pain after a 30 minute period of time in his back as well as in his legs."
 
 
 22
 As noted earlier, there is substantial evidence to support the Appeals Council's determination that the claimant's complaints of pain are not credible. The Secretary points out that the claimant testified that he is able to pick up objects without difficulty and that the numbness and cramps do not prevent him from driving, shopping, shaving, washing dishes or doing laundry. The Secretary also notes that none of the claimant's doctors has diagnosed his numbness or his cramps as disabling. In Kimbrough v. Secretary of Health and Human Services, 801 F.2d 794, 796 (6th Cir.1986), this court held:
 
 
 23
 "[T]he mere possibility of a non-exertional impairment is insufficient. Not even a minor non-exertional limitation is enough; the claimant must show an impairment that significantly limits his ability to do a full range of work at a designated level."
 
 
 24
 There is substantial evidence to support a finding by the Appeals Council that the claimant's pain, numbness, and leg cramps were not significant non-exertional impairments.
 
 
 25
 The claimant also argues that he had a psychological impairment:
 
 
 26
 "This psychological impairment was evidenced by the treating physician of the claimant, Dr. Shiller, who stated in his report that he thought the claimant has a high functional overlay and a large psychological emotional component to his complaint patterns."
 
 
 27
 The Secretary observes that the record does not indicate that claimant had a psychological impairment and that because Dr. Shiller is not a psychiatrist, his statement was not entitled to great weight. We agree. The claimant did not have significant non-exertional impairments, and the Appeals Council did not err in basing its decision upon the grids.
 
 
 28
 Because the claimant has the residual functional capacity to perform light work, Table No. 2 of Part 404, Subpt. B, Appendix 2 of the regulations may be used to determine whether he is disabled. The claimant was 51 years old at the time of the Appeals Council decision, making him a person "approaching advanced age." 20 C.F.R. 404.1563. Under Table No. 2 a person who is approaching advanced age and who has a marginal educational capacity is classified as not disabled. 20 C.F.R. Part 404, Subpt. B, Appendix 2, Sec. 202.10, Sec. 202.11.
 
 
 29
 The claimant is now 55 years old, and has thus become a person of "advanced age." In Varley v. Secretary of Health and Human Services, 820 F.2d 777, 780-81 (6th Cir.1987), this court held that disability is determined as of the time of the administrative law judge's decision. It is immaterial whether application of the grid would result in a finding of disability in any new proceedings that might be held before an ALJ on remand, however, because the record indicates that the claimant is not eligible for benefits on the basis of a disability with an onset date after 1984.
 
 
 30
 The judgment of the district court is AFFIRMED.