909 F.2d 1482
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Leo BUTLER, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 89-1804.
 United States Court of Appeals, Sixth Circuit.
 Aug. 6, 1990.
 
 Before MILBURN and RALPH B. GUY, Jr., Circuit Judges, and WILLIAMS H. TIMBERS, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff, Leo Butler, appeals from the denial of his application for social security disability benefits. On appeal, he claims that: (1) the Secretary erred by discrediting the plaintiff's subjective complaints of pain; and (2) the Secretary has failed to meet his burden of establishing the existence of a significant number of jobs in the national economy that the plaintiff is capable of performing. Finding that the plaintiff's second allegation of error has merit, we will vacate the decision denying benefits and remand for further administrative proceedings.
 
 I.
 
 2
 Butler filed his application for disability insurance benefits on November 3, 1986. His application was denied initially and upon reconsideration. On January 12, 1988, a hearing was held before an administrative law judge (ALJ), and both Butler and a vocational expert (VE) testified at the hearing. Butler was represented by counsel. The ALJ issued a decision in which he found that Butler is not disabled, and that he has the capacity to perform sedentary work with a sit/stand option. The Appeals Council denied his request for review. Butler filed an action for judicial review, and a magistrate issued a report and recommendation determining that substantial evidence supported the Secretary's decision. The district court adopted the magistrate's report and recommendation and affirmed the Secretary's decision to deny benefits. This appeal followed.
 
 
 3
 Butler was born on August 2, 1946, and he was 41 years old at the time of his administrative hearing. He has a tenth grade education, and his most recent job which he held from 1978 to 1983 was as a building attendant for the City of Detroit. As a building attendant, his duties included cleaning the building, mopping, moving heavy furniture and other supplies, and clearing away snow in the winter. Butler left this job in December of 1983 and has not been gainfully employed since that time. He has also worked as a hi-lo operator, press operator, and a van driver. The employment records that he filed indicated that he held this last job for seven years, but he testified that it was only for six months. He claims that he can no longer work because of a back injury that he suffered in 1979 while working for the city.
 
 
 4
 The plaintiff was hospitalized from December 29, 1983, through January 14, 1984, for repair of a right direct and indirect inguinal hernia. The surgery was completed without incident, but it was noted at this time that Butler had a history of back pain. On January 3, 1984, lumbosacral x-rays revealed mild rotoscoliosis of the lower lumbar spine and degenerative disc disease changes at the L4 and L5 vertebrae. An EMG (electromyography) conducted on January 6 revealed a lower motor neuron at the L5 nerve root level on the left side, but no other abnormalities. On January 11, a CT (computerized tomography) study of the lumbar spine was performed. The radiologist noted "degenerative changes involving the apophyseal joints at L5-S1, and to a lesser extent at L4-5. These spurs do not protrude significantly into the spinal canal or the lateral recesses." (App. 102). He also observed "minimal central bulging of [a] disc" but noted that "the theca is not compressed, and the nerve roots do not appear to be compressed either." (App. 102).
 
 
 5
 Dr. Wallace Johnson, an orthopedic surgeon, was called in to consult regarding Butler's back injury. He diagnosed a ruptured disc at L4-L5. Butler refused surgery, and Dr. Johnson prescribed a back brace. Butler underwent physical therapy, which provided some relief. He was advised not to do any heavy lifting, and to do only light work.
 
 
 6
 In a report dated February 6, 1985, Dr. Johnson noted that the range of motion of Butler's lower back was restricted in all directions, and that a straight leg raising test was positive on the left side. He also noted that Butler's left Achilles tendon reflex was depressed, but that sensory perceptions and motor ability were intact. The plaintiff's gait was observed as normal on this date.
 
 
 7
 Dr. Johnson wrote a letter to the plaintiff's attorney in May 1986, advising that Butler should avoid prolonged sitting, standing, walking, bending, twisting, and lifting. He stated that the plaintiff should not lift anything weighing over 10 to 15 pounds, and he restricted the plaintiff from sitting for more than two hours at a time or riding a bus for over two hours at a time.
 
 
 8
 In a report dated December 5, 1986, Dr. Johnson placed the same restrictions on Butler's activity. He noted that lateral bending of the lumbosacral spine was approximately 20 degrees bilaterally, and that forward flexion was about 60 degrees. Extension was to 0 degrees. A straight leg raising test was positive on the right side at 60-70 degrees. Again, he noted that deep tendon reflexes were depressed in Butler's left Achilles tendon. Neurosensory functions of his lower extremities appeared to be intact.
 
 
 9
 Dr. Johnson filed another report in March 1987 in which he described the plaintiff's condition as of his January 1987 office visit. Butler's flexion was diminished to 45 degrees, and extension was 0 degrees, but a straight leg raising test was negative. He placed the same restrictions on Butler's activity and opined that Butler is disabled with his back injury.
 
 
 10
 In July 1987, Dr. Johnson completed a medical assessment of Butler's ability to do work-related activities. Butler could lift or carry 10-15 pounds occasionally, and he could also bend, squat, and reach only occasionally. He should not crawl or climb. He had full use of both feet, and the full use of both of his hands for grasping, pushing and pulling arm controls, and fine manipulation. Dr. Johnson advised that Butler be allowed to sit or stand at will, but that he could sit or stand for a total of three hours in an eight-hour day. Butler could walk for a total of two hours in an eight-hour day.
 
 
 11
 At the request of the Secretary, Butler was examined in January 1985 by Dr. Michael Yurkanin, an orthopedic surgeon. Butler told Dr. Yurkanin that he did not use a cane or a crutch and that he did not take pain medication. Dr. Yurkanin noted that the plaintiff did not appear to be in acute distress at the time of the examination. His clinical evaluation revealed some muscle spasm in the lower back. A straight leg raising test was positive at 50 degrees on the right and at 30 degrees on the left. Motion of the hips was good, and the motion was full bilaterally. Butler complained of pain upon palpation of the lumbosacral joint and of sciatica upon deep palpation of both lower extremities. Dr. Yurkanin noted adequate Achilles reflexes, and he observed that Butler performed a heel-to-toe walk satisfactorily, although with pain. He described Butler's gait as guarded but normal. Flexion was to 60 degrees, extension to 20 degrees, lateral movement to 25 degrees, and rotation to 25 degrees. Dr. Yurkanin concluded that the plaintiff suffered from lumbar myositis with left sciatic neuritis. He recommended that Butler be restricted from prolonged standing and walking, and he restricted Butler from occupational duties that required bending, twisting, stooping, or lifting weights over 5 to 10 pounds.
 
 
 12
 Upon reviewing the January 1984 CT scan and EMG reports, Dr. Yurkanin recommended that Butler undergo a lumbar myelogram to rule out a herniated disc. The remainder of his findings and recommendations remained the same.
 
 
 13
 At the administrative hearing, Butler testified that he is in constant pain, and that his legs sometimes become numb. He can barely walk sometimes, and he has to call his doctor for pain pills about twice a month. He stated that he takes Dolobid twice a day, which relieves the pain somewhat. He testified that he uses a cane sometimes, and that he wears a back brace everyday. On his best days, Butler stated that he can walk to the store and back, a distance of about two blocks. He can sit two to three hours, after which time the pain in his back becomes worse. He can stand about two hours at a time and then has to sit down. Standing too long causes severe pain and numbness, according to Butler.
 
 
 14
 A vocational expert classified Butler's past relevant work with the City of Detroit as unskilled and medium. The VE identified approximately 8,500 to 8,700 unskilled, sedentary bench assembly jobs in the regional economy that offered a sit/stand option. He testified that industrial assembly work allows a worker to sit or stand, and that some bending could be involved.
 
 II.
 
 15
 On appeal, our review is limited. We must affirm the decision of the Secretary if we determine that it was supported by substantial evidence and in accordance with applicable law. 42 U.S.C. Sec. 405(g); Gibson v. Secretary of Health, Educ. & Welfare, 678 F.2d 653, 654 (6th Cir.1982). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). We will address the plaintiff's two allegations of error seriatim.
 
 
 16
 Butler contends that the ALJ erred by not crediting his subjective allegations of pain, and he claims that he is disabled by pain. Although the plaintiff is correct that the ALJ did not state specifically that he was discrediting the plaintiff's subjective complaints of pain, he did opine that "the claimant's symptoms are not very acute." (App. 13). This statement indicates that the ALJ did consider the plaintiff's testimony but did not find it to be credible. Credibility findings of the ALJ are to be accorded great deference. Gooch v. Secretary of Health & Human Services, 833 F.2d 589, 592 (6th Cir.1987), cert. denied, 484 U.S. 1075 (1988). The ALJ's credibility determination in this case was supported by substantial evidence.
 
 
 17
 Although the plaintiff's subjective complaints of pain are to be considered by the ALJ, these complaints alone are not enough to warrant a finding of disabling pain. The regulations provide that there must be medical evidence to support the plaintiff's complaints of pain. 20 C.F.R. Sec. 404.1529. In Duncan v. Secretary of Health & Human Services, 801 F.2d 847 (6th Cir.1986), this court set forth the standard for the evaluation of disabling pain in social security cases:
 
 
 18
 First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain....
 
 
 19
 Id. at 853.[1] Here, the objective medical evidence supports the plaintiff's claim to have a painful back injury, but the medical evidence does not support his claims that the pain is disabling. The objective medical data indicates that the plaintiff suffers from degenerative disc disease, and Dr. Johnson has diagnosed a ruptured disc. However, the radiologist who reviewed the CT scan stated that there was only minimal bulging of one disc and that it did not compress the nerve roots. Dr. Yurkanin stated that the evidence was equivocal, and that a lumbar myelogram would be required to rule out the possibility of a ruptured disc.
 
 
 20
 Both physicians noted reduced flexibility and movement in the lower back, but their findings did not indicate that the pain is disabling. In addition, Butler has not lost any motor strength or sensory perception, and his only loss of reflex is in the left Achilles tendon. Although guarded, his gait was described by both physicians as normal.
 
 
 21
 As a matter of fact, the plaintiff's own testimony does not support his claims of disabling pain. He testified that on his good days, he can walk to the store, and that he can sit or stand for two or three hours. Except for taking Dolobid twice a day, he does not take pain medication regularly.
 
 
 22
 Although Dr. Johnson opined in March 1987 that the plaintiff is disabled from his back injury, the objective medical data and his own clinical findings do not support this conclusion. A treating physician's opinion is not entitled to the usual deference when it is unsubstantiated by clinical findings and inconsistent with his own prior opinions. Villarreal v. Secretary of Health & Human Services, 818 F.2d 461, 463 (6th Cir.1987). In this case, Dr. Johnson's observations of the plaintiff were not materially different from his observations upon previous examinations, and no new clinical tests were conducted. In prior reports, Dr. Johnson had merely restricted Butler to light work, with certain restrictions on his sitting, standing, and lifting. There is no evidence in the record to support his sudden change of opinion that the plaintiff is disabled.
 
 
 23
 Upon a review of the record as a whole, we conclude that the ALJ properly discredited the plaintiff's subjective complaints of disabling pain, and that the objective medical evidence does not confirm the severity of the alleged pain. The ALJ's conclusion that the plaintiff's pain is not disabling is supported by substantial evidence.
 
 
 24
 Butler also challenges the ALJ's determination that there are a significant number of jobs in the national economy that he is capable of performing. He claims that the Secretary has not met his burden of proof on this issue. When applying for disability insurance benefits, the plaintiff has the burden of proving that he cannot perform his past relevant work. Once the plaintiff has met this burden, the Secretary must bear the burden of showing that the plaintiff has the residual functional capacity to perform other substantial gainful activity that exist in the national economy. Varley v. Secretary of Health & Human Services, 820 F.2d 777, 779 (6th Cir.1987); Kirk v. Secretary of Health & Human Services, 667 F.2d 524, 529 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983).
 
 
 25
 In this case, the plaintiff met his burden of establishing that he is unable to perform his past relevant work, and the burden shifted to the Secretary to introduce evidence that jobs exist that the plaintiff is capable of performing. Because the plaintiff did not fit within the specifications of the medical-vocational guidelines, or "grid," 20 C.F.R., Part 404, Subpt. P, App. 2, a vocational expert testified on behalf of the Secretary. The plaintiff contends that the questioning of the VE was improper, and that his testimony cannot constitute substantial evidence to discharge the Secretary's burden.
 
 
 26
 After eliciting testimony about the VE's qualifications and about the plaintiff's past relevant work, the ALJ engaged the VE in the following colloquy:
 
 
 27
 Q. All right. Are there other light and sedentary unskilled jobs in the local economy?
 
 
 28
 A. There are light and sedentary unskilled jobs--most of them are bench jobs.
 
 
 29
 Q. Okay. Could you--
 
 
 30
 A. And custodial jobs.
 
 
 31
 Q. All right. Would you give me some numbers in each of those categories.
 
 
 32
 A. Well, you take the sedentary jobs first. Sedentary jobs that are accomplished at the bench are jobs like sorting gloves, wiping cloths, packing children's toys, doing sorting jobs, simple assembly like pencils and pens and fishing lures and the like. Packaging confections where you take candy and peanuts and that sort of thing and hermetically seal packages. Those are unskilled bench jobs along with the people who sort all the junk mail you get at home. They do that at a bench and that's unskilled as well. There are about 85 to 8700--
 
 
 33
 Q. Okay.
 
 
 34
 A. sedentary unskilled bench jobs in the tri-county work force. Now the rule of thumb is that light unskilled work characteristically are things like parking lot attendants, porters and in automotive agencies people who do evening janitorial light dusting and sweeping and office clean up as a part of building cleaning crews. That's about another 3800.
 
 
 35
 Q. All right. The claimant has alleged vocationally limiting factors primarily being the constant and unremitting pain that he has described that he has in his back and the limitations as a consequence on his ability to walk, sit or stand for any length of time along with the leg numbness that he has described. These--this may be vocationally limiting, may it not, to the claimant's ability to perform work related activities depending on the severity of his symptomatology.
 
 
 36
 That is whether, in fact, the symptoms that he describes here this morning whether those exist, whether they're mild, moderate or severe. That is what would be determinative of his ability to perform work related activities. Would that be a correct statement?
 
 
 37
 A. Yes, sir.
 
 
 38
 Q. Counsel, go ahead (INAUDIBLE).
 
 
 39
 (App. 45-47). The above-quoted material constitutes the entirety of the VE's testimony in response to the ALJ's questions about other jobs in the national economy.
 
 
 40
 The plaintiff argues that the questioning of the VE by the ALJ was improper because it amounted to a defective hypothetical question. Substantial evidence may be produced through the testimony of a vocational expert in response to a hypothetical question, but only " 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.' " Varley, 820 F.2d at 779 (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir.1984)). The magistrate dismissed this allegation by stating simply that the ALJ asked the VE no hypothetical questions at all, and that the questions therefore could not be defective. The questions were not defective hypotheticals, but they did not elicit the kind of testimony from the VE that would enable the Secretary to demonstrate the existence of jobs that Butler is capable of performing. When the Secretary relies upon the testimony of a vocational expert to discharge this burden, the VE must render his opinion on the issue of whether a person with the claimant's characteristics and restrictions is capable of performing work in the national economy. This is why this court requires that hypothetical questions accurately portray the plaintiff's individual impairments. It is not enough for the VE simply to identify an occupational base. Whether the questions are phrased as hypotheticals or in some other form, they must elicit the VE's opinion of whether the claimant is capable of performing work within this base. Otherwise, his testimony is not probative on the issue about which he is testifying.
 
 
 41
 Here, all the ALJ asked the VE to do was to describe light and sedentary jobs in the regional economy that offered a sit/stand option. He never asked the VE whether a person with Butler's qualifications and restrictions was capable of performing these jobs. Even when responding to questions from Butler's attorney, all the VE did was describe these jobs in more detail. Because the VE never linked the plaintiff to the occupational base he described, his testimony cannot constitute substantial evidence to discharge the Secretary's burden at this level. Accordingly, we will remand this case to the Secretary for the introduction of evidence on the question whether there are a significant number of jobs in the national economy that the plaintiff is capable of performing.
 
 
 42
 The decision denying disability insurance benefits is VACATED, and this case is REMANDED for further administrative proceedings consistent with this opinion.
 
 
 
 *
 The Honorable William H. Timbers, United States Court of Appeals for the Second Circuit, sitting by designation
 
 
 [1]
 See also McCormick v. Secretary of Health & Human Services, 861 F.2d 998 (6th Cir.1988) (Duncan standard applicable to cases decided after the sunset of the Disability Benefits Reform Act)