918 F.2d 179
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Louise NYKIEL, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 90-1042.
 United States Court of Appeals, Sixth Circuit.
 Nov. 14, 1990.
 
 Before NATHANIEL R. JONES and WELLFORD, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Louise Nykiel appeals the district court's grant of summary judgment affirming the Secretary's denial of social security benefits. The Secretary had found that Nykiel was not disabled because she was vocationally qualified to perform substantial gainful activity at the time her benefits expired. We find, however, that the Secretary's denial of benefits was not based upon substantial evidence, and therefore reverse.
 
 
 2
 * Mrs. Nykiel was thirty-nine years old with three children when her insured status expired on December 31, 1986. From 1972-1981 she worked as a plastic injection molding machine operator. In 1979 and 1981, Nykiel underwent surgery for carpal tunnel syndrome, a painful malady affecting her wrists and hands. Nykiel filed an application for disability insurance benefits in November 1983, which was denied. Denial was upheld by the Appeals Council in August 1984. As Nykiel did not appeal, this prior determination has a binding effect concerning any claim through August 1984. 20 C.F.R. Sec. 404.905 (1990). The disability determination involved in the instant action, therefore, concerns the period between August 1984 and December 31, 1986.
 
 
 3
 Nykiel filed the application which forms the basis of this appeal on August 25, 1986. The Social Security Administration denied the request, and Nykiel filed a request for a hearing. At the hearing on February 9, 1988, Nykiel, her attorney, and a vocational expert ("VE") appeared before Administrative Law Judge ("ALJ") Alfred Varga. Nykiel testified to constant aching pain and loss of strength in her hands and fingers due to tendonitis. She also testified to extreme difficulty in performing household chores because of the pain in her extremities, as well as recurring headaches and emotional problems stemming from her incapacity. Nykiel has not been employed since September 11, 1981, her last day of employment as a molding machine operator.
 
 
 4
 The vocational expert testified that Nykiel would not be able to return to any job she had performed in the past because of the repetitive use of the hands that would be required. As to Nykiel's ability to perform work, assuming her testimony to be true, the expert said that the question was not whether she could do other jobs, but whether she could perform the job for an eight-hour period. The vocational expert also testified that Nykiel could perform jobs requiring limited amounts of repetitive hand movements, such as jewelry or florist shop sales. In addition, a September 1986 report from Nykiel's treating physician, Dr. Jerry Taylor, stated that although Nykiel experienced a 50% loss of grip strength in both hands, she was able to write legibly, pick up small objects, and hold a pencil without loss of gross dexterity.
 
 
 5
 On September 23, 1988, the ALJ found that Nykiel was not under a "disability" as defined in the Social Security Act on or before December 31, 1986, the date her insured status expired. The ALJ found that Nykiel suffered from severe bilateral medial and lateral humeral epicondylitis and bilateral de Quervain's disease. The ALJ also found that Nykiel's testimony was "not wholly credible when viewed in light of the medical evidence[.]" J.App. at 16. Finally, the ALJ found that although Nykiel's ability to perform light or sedentary work was reduced due to her problems with her extremities, "there are a significant number of jobs in the national economy which she could perform." Id. at 17. The ALJ concluded that Nykiel was not entitled to disability insurance benefits because she "retained sufficient functional capacity to do work activity provided such activity did not require lifting more than minimal weights or repetitive use of the upper extremities in performance of work tasks." J.App. at 15.
 
 
 6
 On March 27, 1989, the Appeals Council denied Nykiel's request for review. Nykiel then filed a civil action under 42 U.S.C. Sec. 405(g) in the United States District Court for the Eastern District of Michigan, Judge Lawrence P. Zatkoff presiding. Following referral to a U.S. Magistrate, the parties filed cross motions for summary judgment. On September 14, 1989, the Magistrate recommended that the Secretary's motion for summary judgment be granted. On November 8, 1989, the district court adopted the Magistrate's recommendation and granted defendant's summary judgment motion. This appeal followed.
 
 II
 
 7
 Under 42 U.S.C. Sec. 405(g), the findings of the ALJ are conclusive if supported by substantial evidence. As a result, "our review is limited to determining whether there is substantial evidence in the record to support the findings." Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 851 (6th Cir.1986). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983).
 
 
 8
 Under regulations promulgated by the Social Security Administration, an individual may be entitled to disability benefits if the impairment prevents the individual from performing "past relevant work". 20 C.F.R. Sec. 404.1520(f) (1990). The ALJ found that Nykiel was unable to perform her past relevant work as a molding machine operator. Accordingly, the ALJ evaluated Nykiel under section 404.1520(f)(1) of the regulations:
 
 
 9
 If you cannot do any work you have done in the past because you have a severe impairment(s), we will consider your residual functional capacity and your age, education, and past work experience to see if you can do other work. If you cannot, we will find you disabled.
 
 
 10
 Nykiel argues that the Secretary's decision to deny benefits was not supported by substantial evidence because (1) the proof that Nykiel could perform work, given the ALJ's finding regarding her limitations and the VE's testimony, was inconclusive, and (2) the ALJ improperly evaluated her testimony of physical pain.
 
 
 11
 * Nykiel was not able to return to her previous job as a molding machine operator. Therefore, as the ALJ noted, the burden was on the Secretary to prove that there were other jobs she could perform consistent with her limitations. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir.1987). The Secretary can meet this burden through "a finding supported by substantial evidence that [claimant] has the vocational qualifications to perform specific jobs[.]" O'Banner v. Secretary of Health, Education & Welfare, 587 F.2d 321, 323 (6th Cir.1978).
 
 
 12
 The ALJ found that prior to the expiration of her insured status, Nykiel had the residual functional capacity "to perform the physical exertional and nonexertional requirements of work[.]" J.App. at 16. However, the ALJ also found that Nykiel could not perform any job requiring "lifting more than minimal weights or activities requiring repetitive use of the upper extremities or activities requiring frequent fine manipulation." Id. In addition, the ALJ found that Nykiel's medical impairment was "severe" and that her "residual functional capacity for the full range of light and sedentary work is reduced by limitations on use of the upper extremities." Id. The ALJ further stated that Nykiel's "additional nonexertional limitations do not allow her to perform the full range of light and sedentary work." Id. at 17.
 
 
 13
 The ALJ nevertheless concluded that, despite Nykiel's limitations, "there are a significant number of jobs in the national economy which she could perform. Examples are: cosmetic, drug and jewelry sales." Id. The ALJ based this conclusion on the testimony of a vocational expert ("VE") who testified that the sales jobs would not require the repetitive use of the hands or heavy lifting. The VE's conclusion that she could perform work was given in response to a hypothetical question. The exchange between the ALJ and the vocational expert went as follows:
 
 
 14
 Q. Assume for the sake of this hypothetical that we have a person the claimant's age, her sex, her educational level, her work experience, the transferable skills that you indicated, and assume also the testimony that you heard here today and assume that it is true and correct to the degree stated, if you assume those factors, could she return and perform any of the jobs that she performed in the past?
 
 
 15
 A. No, sir.
 
 
 16
 Q. Would she be able to do any other kinds of work?
 
 
 17
 * * *
 
 
 18
 * * *
 
 
 19
 A. I think she could do many jobs, but the question is she couldn't do it for very long.
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 We're talking about sales jobs, cosmetic sales, jewelry sales. We're talking about 45,750 jobs in the retail sales area.
 
 
 23
 Id. at 95-96.
 
 
 24
 The testimony of a vocational expert can be crucial in assessing a claimant's ability to perform a job other than past relevant employment. Moreover, a vocational expert's response to a hypothetical question can serve as a basis for substantial evidence " 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.' " Varley, 820 F.2d at 779 (citation omitted). In the instant case, the vocational expert was fully aware of Nykiel's impairments. Instead of demonstrating Nykiel's capacity for work, however, we find that the testimony of the VE reveals significant limitations on Nykiel's abilities. The VE testified that the sales jobs he thought Nykiel might be able to perform involve repetitive use of the hands, which appears to contradict his earlier response to the hypothetical:
 
 
 25
 Q. [I]n any sales position, you can have a large number of people come in at one particular time and a person would have to work very rapidly for maybe an hour, two hours, or maybe three hours, depending upon the day, is that correct?
 
 
 26
 A. That's possible, yes.
 
 
 27
 Q. And if that were to occur, then if the person would have the difficulty with using their hands repetitively, they would not be able to do those jobs that you've testified to, is that a fair statement?
 
 
 28
 A. That would be a fair statement.
 
 
 29
 Q. And isn't it true that the sales jobs would also involve certain packaging or--strike that--certain stocking. By stocking, I mean putting items on shelves, opening boxes, that sort of thing?
 
 
 30
 A. It's possibly, but it's a minor part.
 
 
 31
 Q. Okay. But that--that would involve repetitive use of the hands at all?
 
 
 32
 A. It could, yes.
 
 
 33
 Q. And if the person would have difficulty with repetitive use of their hands and have pain which occurred with use of the hands, that would preclude them from doing those jobs?
 
 
 34
 A. Yes.
 
 
 35
 J.App. at 102-03 (cross-examination of vocational expert).
 
 
 36
 We regard the vocational expert's testimony as inconclusive regarding Nykiel's ability to perform sales jobs. Thus, medical evidence should be considered along with the VE's testimony. O'Banner, 587 F.22d at 323. Nykiel's treating physician was Dr. Jerry Taylor. Dr. Taylor had treated Nykiel from December 1979 through 1988, often seeing her as frequently as every two months. J.App. at 229. In January 1988, Dr. Taylor wrote that:
 
 
 37
 [Nykiel] has been unable to perform any work since Sept. 1981 and also has difficulty in performing any significant amounts of house work because of the multiple problems with her hands and wrists.
 
 
 38
 * * *
 
 
 39
 * * *
 
 
 40
 It is my impression that the patient is permanently disabled from nay [sic] substantial or gainful employment in the national economy because of the multiple sites of tendonitis and previous history of surgery for carpal tunnel syndrome and DeQuervain's disease bilaterally as well as an ongoing chronic right lateral humeral epicondylitis which has failed to respond to treatment. I do not expect any significant improvement in her status with time or further surgical or medical treatment and consider her to be disabled from employment at this time.
 
 
 41
 J.App. at 230 (letter of Dr. Taylor to Nykiel's attorney).
 
 
 42
 In November 1988, Dr. Taylor stated that "I consider [Nykiel's] disabling conditions to be permanent and do feel that she is disabled from any gainful employment that exists within the national economy." J.App. at 313. This court accords "substantial deference" to the opinions of treating physicians. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985). The ALJ did take note of a September 1986 report of Dr. Taylor's describing a 50% loss of grip and the doctor's observation that he felt Nykiel could button clothes, write, "pick up small objects, and hold a pencil." J.App. at 14-15. However, the ability to pick up small objects and hold a pencil does not automatically suggest that Nykiel could perform light or sedentary sales jobs.
 
 
 43
 The Secretary argues that whatever disability Nykiel suffered from in 1987 or 1988, at the time of the expiration of her insured status in December 1986 she was not disabled. Although Nykiel underwent wrist surgery in 1987, and the ALJ noted a "definite worsening" following the 1987 surgery, the record does not support a conclusion that her condition in 1986 was significantly better than in 1987 or 1988. Indeed, Dr. Taylor stated that as of August 1984 Nykiel was "permanently disabled from any gainful employment that exists in the national economy." J.App. at 312.
 
 
 44
 The VE's testimony, Dr. Taylor's conclusions, and the medical findings of the ALJ all suggest that the degree of manual dexterity demanded in a sales job would be unattainable for Nykiel. The Secretary concedes that Nykiel could not perform a job involving constant repetitive hand movements, but emphasizes the non-physical aspects of sales jobs, such as explaining products and educating customers regarding purchases. Brief of Defendant-Appellee at 24-25. Although there are occasions when salespersons do not use their hands, we cannot find that the ALJ's conclusion that Nykiel could perform retail sales jobs is supported by substantial evidence. Although the vocational expert testified that there were 47,750 retail jobs in the area, we do not read the VE's testimony to support a finding that Nykiel could perform one of these jobs. In response to a question from the ALJ, the VE described the limitations on Nykiel's ability to work:
 
 
 45
 The constant pain, Your Honor. The fact that she cannot lift a coffee cup. She states that she has no grip strength in--in both her hands, and that's why she has to use both hands to lift a coffee cup. The fingers get numb and stiff. If she uses the hands, the hands swell, and the fact that she lies down three or four hours a day, particularly when she takes the medication, the Tylenol 3. She cannot wash her hair. There's also, in terms of her testimony, the depression factor. The degree of that impairment, I--I cannot testify to, but it has to be a factor.
 
 
 46
 J.App. at 97-98.
 
 
 47
 Nykiel points to the VE's reluctance to identify any job she could perform, to the VE's emphasis on the use of the hands in any sales job, and the VE's belief that Nykiel could not perform any sales job for eight continuous hours. J.App. at 95-96. On cross-examination, the VE conceded that these sales positions could involve repetitive use of the hands. Thus, we conclude that the jobs the VE described were not jobs she could perform. Therefore the Secretary's decision was not supported by substantial evidence.
 
 B
 
 48
 The ALJ made a factual finding that Nykiel's subjective evaluations of her pain and disability, through December 31, 1986, were "not wholly credible when viewed in light of the medical evidence." J.App. at 16. In evaluating a claimant's assertions of pain, "[o]bjective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques ... must be considered in reaching a conclusion as to whether the individual is under a disability." 42 U.S.C. Sec. 423(5)(a)(1988). Regarding questions of credibility, "we will not normally substitute our impressions on the veracity of a witness for those of the trier of fact." Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.1987) (per curiam), cert. denied, 108 S.Ct. 1050 (1988).
 
 
 49
 This court applies a two-prong test in evaluating subjective allegations of pain. If there is objective medical evidence of an impairment, then we next determine "(1) whether the objective medical evidence confirms the severity of the alleged pain arising from the medical condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." Duncan, 801 F.2d at 853.
 
 
 50
 The ALJ's findings confirm that Nykiel has established the objective medical evidence of an impairment. In addition, there is a medical basis for some degree of pain. The ALJ found, however, that the evidence did not confirm the severity of the pain alleged. The ALJ relied on reports of Dr. Taylor, Nykiel's treating physician, that although she had experienced a 50% loss of grip strength, she was able to write, pick up small objects, and hold a pencil without a loss of gross dexterity. However, the ALJ also found that Nykiel suffered from "severe bilateral medial and lateral humeral epicondylitis and bilateral de Quervain's disease[,]" and that her capacity for light work was "reduced by limitations on use of upper extremities." J.App. at 16 (emphasis added). The record does not reveal contradictory statement by Nykiel which would impact on her credibility. See Gooch, 833 F.2d 589, 592 (claimant's testimony he did not smoke contradicted by physician's testimony); Hardaway v. Secretary of Health and Human Services, 823 F.2d 922, 928 (6th Cir.1987) ("A review of the record reveals that several of [claimant's] statements were contradictory."). In general, this court is hesitant to disturb an ALJ's findings regarding a witness' credibility. In Nykiel's case, though, we find that the "objective evidence confirms the severity of the alleged pain arising from the condition[.]" Duncan, 801 F.2d at 853. As a result, we conclude that the substantial evidence does not support the ALJ's finding that Nykiel's testimony regarding the severity of pain was not credible.
 
 III
 
 51
 For the foregoing reasons, we REVERSE and REMAND to the district court with instructions to remand to the Secretary for an award of benefits.
 
 
 52
 WELLFORD, Circuit Judge, dissenting.
 
 
 53
 I would find that substantial evidence supports the decision of the ALJ as affirmed by the Appeals Council, and as recommended by the full report of Magistrate Komives, and, after further review, by the district court in its opinion and order. Plaintiff is a relatively young individual who was represented throughout these proceedings by competent counsel.
 
 
 54
 As pointed out by the magistrate, plaintiff's counsel emphasized emotional difficulties of the plaintiff, and I would find that she has failed in her burden to show mental or emotional disability, even if considered in conjunction with her conceded physical ailment. Her handwriting, as reflected in the record, is excellent despite her carpal tunnel syndrome.
 
 
 55
 Dr. Taylor's examination in November of 1983 revealed no sensory, motor, or reflex loss in respect to her arm, hand, and finger components, and he found a "full" range of motion at that time, in all joints of both upper extremities. (J.A. 146). There was, then, no loss of grip strength, nor loss of gross dexterity, and she could perform all activities with respect to hand and arm dexterity as especially noted by Dr. Taylor.
 
 
 56
 Her cooperation with a Michigan vocational rehabilitation program during 1982 and 1983 was poor. Mr. Nykiel was angry that "Dr. Taylor had released Mrs. Nykiel to return to one-handed work with limited use of the right upper extremity." (J.A. 151). She failed to meet appointments without explanation. "Mrs. Nykiel expressed her depression and concern." (J.A. 151). Repeated efforts to have Mrs. Nykiel meet with the vocational counselor were either ignored or resisted. (J.A. 155, 157). Mrs. Nykiel told the counselor in August of 1983 she "cannot use her right arm for long periods of time."[1] She also complained about headaches, but EMG tests and neurological examination in that regard were normal. (J.A. 166). At one time during her 1983 course of medical treatment, plaintiff "felt that the hot packs and ultrasound were effective on treating the pain in her arm," but she still complained about headaches.; Her husband, at this conference (as at most) "interjected his anger" about her treatment at Olsonite "as well as the medical profession." (J.A. 169, 170).
 
 
 57
 Dr. Rim, a neurologist, indicated upon examination in March of 1984 that he found "no limitation of range of motion of the wrists or fingers, or any other joints." (emphasis added, J.A. 182). He added: "Muscle strength seems to be within normal limits." (J.A. 182).
 
 
 58
 In December, 1983, Dr. Coccia noted that plaintiff "states that wearing the tennis elbow strap does help the arm, the exercises, curling exercises to build up her forearm and biceps muscles she has been doing gradually." Dr. Taylor's cryptic letter of May, 1984, to plaintiff's attorney indicates that "pain" (not objective medical examination of physical capacity) prevents "her from participating in gainful employment and she is limited to one handed work ... or extremely light two handed work." This letter is inconsistent with Dr. Taylor's (and other doctors') prior findings.
 
 
 59
 That many one handed or one armed persons are capable of light or sedentary work is a relevant and reasonable consideration in this case. It is evident that plaintiff lost effective use of her left arm, wrist, and hand only in 1987 at the earliest.
 
 
 60
 I would affirm, or, in the alternative, remand for further consideration as to the nature and extent of plaintiff's abilities, including her complaints of pain, in light of available limited light and sedentary work.