**John VARLEY, Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.**

No. 86–1466.

United States Court of Appeals,
Sixth Circuit.

Argued April 16, 1987.

Decided June 2, 1987.

Norton J. Cohen, Miller, Cohen, Martens, and Ice, P.C., Detroit, Mich., Kevin P. Kales argued, Southfield, Mich., for plaintiff-appellant.

Ross I. Mackenzie, Asst. U.S. Atty., Detroit, Mich., Linda E. Tucker argued, Chicago, Ill., for defendant-appellee.

Before MARTIN, JONES and MILBURN, Circuit Judges.

MILBURN, Circuit Judge.

Plaintiff John Varley appeals the judgment of the district court affirming the final decision of the Secretary denying plaintiff's application for disability benefits under the Social Security Act. For the reasons set forth below, we reverse and remand with instructions that the Secretary determine whether plaintiff's transferable skills are highly marketable.

## I.

Plaintiff filed his application for disability insurance benefits on November 5, 1980, alleging tinnitus [1] and deafness. The appli-

cation was denied initially and upon reconsideration. At plaintiff's request, a de novo hearing was held on February 24, 1982. The ALJ subsequently issued his opinion, relying on the "grid" to find plaintiff not disabled. The Appeals Council denied plaintiff's request for review on July 7, 1982.

On August 5, 1982, plaintiff sought review of the Secretary's decision in federal district court. On January 18, 1983, the magistrate, to whom the action had been referred, issued his Report and Recommendation finding that the Secretary's application of the grid was improper because plaintiff's impairments were nonexertional. The magistrate further found the testimony of the vocational expert too general to provide the necessary substantial evidence. The district court adopted the magistrate's Report and Recommendation and remanded the case to the Secretary for further proceedings.

On December 15, 1983, a second hearing was held before a different ALJ. On August 30, 1984, the ALJ issued a recommended decision that plaintiff be found not disabled. After stating that plaintiff was unable to perform his past relevant work and noting that plaintiff was sixty-two years old (advanced age) and that he has a high school education, the ALJ continued:

> The claimant has acquired work skills, such as knowledge of and the ability to use hand and power tools, the ability to read blueprints, above-average form and spacial perception, mechanical comprehension and the ability to make reports, which he demonstrated in past work, and which, considering his residual functional capacity, can be applied to meet the requirements of semi-skilled work activities of other work (20 C.F.R. 404.1568).

> If the claimant's nonexertional limitations did not significantly compromise his ability to perform work at all exertional levels, section 204.00, Appendix 2, Subpart P, Regulations No. 4 indicates that a finding of not disabled would be appro-

---

1. Tinnitus is defined as "[a] ringing, hissing, roaring, or buzzing sound heard by a patient although no sound is actually being produced; *i.e.*, a subjective sensation of sound in the ears." J. Schmidt, *Attorneys' Dictionary of Medicine* T–84 (1986).

priate. If his capacity to work at all levels were significantly compromised, the remaining work which he would functionally be capable of performing would be considered in combination with his age, education, and work experience to determine whether a work adjustment could be made.

Considering the types of work which the claimant is still functionally capable of performing in combination with his age, education and work experience, he can be expected to make a vocational adjustment to work which exists in significant numbers in the national economy. Examples of such jobs are clerical jobs. Vocational testimony establishes the existence of a significant number of such jobs in the economy.

Joint Appendix at 137.

On November 30, 1984, the Appeals Council adopted the findings and conclusions contained in the ALJ's recommended decision. Plaintiff's case was then reinstated in federal court. On September 27, 1985, the magistrate issued a Report and Recommendation finding that "[t]he supplemental testimony of the vocational expert ... furnishes substantial evidence in support of the ALJ's finding that Plaintiff did not have a disability as defined by the Act." Report at 3. The district court thereafter adopted the magistrate's Report and Recommendation and granted the Secretary's motion for summary judgment. This appeal followed.

## II.

■■■ As the Secretary concedes, once the ALJ determined plaintiff did not have the residual functional capacity to perform his past relevant work, the burden shifted to the Secretary to show that plaintiff possesses the capacity to perform other substantial gainful activity that exists in the national economy. *See Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 529 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). To meet this burden, there must be

"a finding supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *O'Banner v. Secretary of Health, Education & Welfare*, 587 F.2d 321, 323 (6th Cir.1978). Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a "hypothetical" question, but only "if the question accurately portrays [plaintiff's] individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.1984); *see also Pendley v. Heckler*, 767 F.2d 1561, 1562–63 (11th Cir.1985) (per curiam); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir.1975) (per curiam).

At the second hearing, the vocational expert testified that if plaintiff's testimony were accepted as true, he would be unable to perform any substantial gainful activity. Plaintiff argues that the ALJ's refusal to accept this testimony was erroneous because there was no basis for the ALJ's conclusion that plaintiff's allegations of severe restriction in functional capacity are not consistent with the objective record. Plaintiff asserts that every psychiatrist and psychologist who rendered an opinion concluded that plaintiff is incapable of coping with a work situation.

However, the Secretary is correct in asserting that although the physicians and psychologists diagnosed a severe, chronic condition, the examination results do not document functional debilitation.[2] For example, Dr. Finkelstein found no symptoms of thought disorder and described plaintiff as extremely cooperative and responsive. Plaintiff's sensorium and mental grasp were intact and judgment was adequate. Dr. Cho reported similar findings (good contact with reality, spontaneous, coherent and relevant speech) and concluded that plaintiff's prognosis was fair. Dr. Friedman found no indication of association defect or thought disorder and stated that plaintiff was oriented as to time, place and person with memory intact. The Secretary is correct in noting that Dr. Mearin's one-page letter was not supported by the re-

---

**2.** The Secretary is also correct in noting that the medical experts' statements that plaintiff is disabled are not binding. *See, e.g., King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984).

sults of his evaluation, testing, or treatment and is therefore entitled to little weight. *See Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir.1985). Finally, Dr. Crawford stated that plaintiff was fully oriented, in contact with reality, alert, and responsive to questions.

■ These findings provide sufficient justification for the ALJ's finding that plaintiff's allegations of severe restriction in functional capacity are not consistent with the objective record. Moreover, "[s]ince the A.L.J. had the opportunity to observe the demeanor of [plaintiff], his conclusions with respect to credibility 'should not be discarded lightly.' " *Houston v. Secretary of Health and Human Services,* 736 F.2d 365, 367 (6th Cir.1984) (quoting *Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383, 387 (6th Cir. 1978)). Accordingly, the ALJ did not err in declining to accept the vocational expert's testimony that there are no available jobs, as it was based on the assumption that plaintiff's testimony was entirely credible.

■ Plaintiff next argues that the hypothetical actually relied upon by the ALJ was faulty because the question omitted any reference to plaintiff's need to avoid noise, plaintiff's inability to cope with interpersonal contact, and plaintiff's dizziness and hearing loss. However, the hypothetical required the vocational expert to assume plaintiff had to avoid exposure to extended loud noise and close contact with coworkers and supervisors. The vocational expert testified that the jobs she identified were in an office setting, where the noise level is much lower than in manufacturing. She further testified that these jobs involved minimum interaction with supervisors and coworkers. This testimony fairly takes into account plaintiff's limitations regarding exposure to noise and the need to minimize interpersonal contact.

As to plaintiff's hearing loss, the Secretary correctly observes that the record shows that with the use of his hearing aid, plaintiff can hear normal conversation. Moreover, Dr. Phillips stated that plaintiff's speech discrimination scores indicated that he could work "within certain limits."

As to plaintiff's dizziness, the ALJ correctly observed that there is no objective evidence to support the existence of the symptoms alleged. Accordingly, we find the factual assumptions underlying the hypothetical to be supported by substantial evidence.

Plaintiff next argues that the ALJ's decision is defective because no finding was made that his skills are highly marketable. At the time of the second hearing, plaintiff was sixty-two years old which is considered "close to retirement age." *See* 20 C.F.R. § 404.1563(d). Section 404.1563(d) provides:

> *Person of advanced age.* We consider that advanced age (55 or over) is the point where age significantly affects a person's ability to do substantial gainful activity. If you are severely impaired and of advanced age and you cannot do medium work (see § 404.1567(c)), you may not be able to work unless you have skills that can be used in (transferred to) less demanding jobs which exist in significant numbers in the national economy. *If you are close to retirement age (60–64) and have a severe impairment, we will not consider you able to adjust to sedentary or light work unless you have skills which are highly marketable.* (emphasis supplied).

■ In response, the Secretary first argues that the relevant time for determining plaintiff's age is either the date of the application or the date of the first hearing. We can find no support for this contention. Rather, the claimant's age as of the time of the decision governs in applying the regulations. For example, in *Podedworny, supra,* the court noted that the claimant's "age at the time of the hearing is defined in the regulations as 'closely approaching advanced age.' " 745 F.2d at 219 n. 5. After determining that the Secretary's decision was erroneous, the court observed that "given appellant's *current age* of 57, which is classified as 'advanced age' under these regulations, *different rules within the grid would now apply in any new proceedings." Id.* at 221 n. 9 (emphasis supplied). This interpretation is consistent

with the general thrust of the regulations. The relevant inquiry is whether the claimant has the ability to engage in substantial gainful activity. The fact that a claimant who is unable to engage in such activity at the time of the decision may have been able to do so at some point in the past goes to the question of the onset date, not the question of disability.

■ The Secretary next argues that § 404.1563(d) is not applicable to the present nongrid determination because the regulation interprets Rule 202.00(f) of the grid. *See Blake v. Secretary of Health and Human Services,* 528 F.Supp. 881, 887 n. 15 (E.D.Mich.1981) (Section 404.1563(d) "appears to interpret Rule 202.00(f)."). Although there is no reason to doubt that § 404.1563(d) is applicable to grid determinations, this fact does not preclude application of the regulation in the present case. Section 404.1563 (which is not a part of the "grid" set forth in Appendix 2) is entitled "Your age as a vocational factor." Section 404.1560(b)(1) provides that the Secretary will use information regarding the claimant's vocational factors, including age, "[w]hen we cannot decide whether you are disabled on medical evidence alone." Therefore, section 404.1563(d), by the terms of the regulations, applies to *all* claims that meet the requirements of the section. The present case falls within that category.

■ Given that § 404.1563(d) is applicable to the present case, the absence of a finding that plaintiff's skills are highly marketable forecloses the possibility of finding that substantial evidence supports the Secretary's decision. *See Tom v. Heckler,* 779 F.2d 1250, 1256 (7th Cir.1985) ("The language is unmistakably clear. Absent a finding that a claimant who is close to retirement age has acquired skills which are also 'highly marketable,' the regulations do not permit a finding of transfer-

ability."); *Renner v. Heckler,* 786 F.2d 1421, 1424–25 (9th Cir.1986) (per curiam).

A finding that plaintiff's transferable skills are highly marketable is required even though the Secretary relied on the testimony of the vocational expert. In the present case, the Secretary has determined that the skills plaintiff acquired in his medium-strength job at General Motors are transferable to the office jobs identified by the vocational expert.[3] This evidence would be sufficient to support a finding that a younger individual is capable of performing substantial gainful activity. However, an individual of plaintiff's age will obviously have greater difficulty obtaining work in an entirely new setting:

> "Age" not only refers to "how old you are (your chronological age)" but also to "the extent to which your age affects your ability to adapt to a new work situation and *to do work in competition with others.*" 20 C.F.R. § 404.1563(a) (Emphasis added).... Although the statutory definition of disability specifically provides that vocational factors must be viewed in terms of their effect on the ability to perform jobs rather than the ability to obtain them, *see* 42 U.S.C. § 423(d)(2), the Secretary has nevertheless recognized that there is a direct relationship between age and the likelihood of employment, 43 Fed.Reg. 55353 (November 28, 1978), and that the advantage of having acquired (through past employment) certain skills or training may no longer offset the vocational disadvantage of age as a claimant becomes older.

*Tom,* 779 F.2d at 1257 n. 11. *See also Renner,* 786 F.2d at 1425 ("the structure of the regulations, with progressively more liberal requirements for older claimants, necessitates a separate and specific evaluation of marketability.").

■ In our view, the regulation sets forth a straightforward command that be-

---

**3.** For this reason, the fact that plaintiff may be capable of performing medium work, as the Secretary argues, is irrelevant to the applicability of the regulation in the present case. It is true that the regulation, by its terms, applies where the claimant "cannot do medium work." 20 C.F.R. § 404.1563(d). However, in the

present case, the ALJ in no way relied on plaintiff's alleged ability to perform medium work. Rather, the ALJ determined that plaintiff possesses skills transferable to sedentary work. This is the precise situation contemplated by the regulation.

fore it can be determined that a claimant over sixty years of age, who acquired skills while performing medium work, is able to transfer those skills to sedentary work, it must first be shown that the skills are highly marketable. This proposition is intuitively reasonable, in that it reflects the reality that older persons, who do not possess highly marketable skills, will find it difficult to obtain *any* employment. Accordingly, this case must be remanded for a finding as to whether plaintiff's skills (use and knowledge of hand and power tools, use and knowledge of blueprints, ability to write reports, and mechanical knowledge) are highly marketable.[4]

Plaintiff's remaining arguments are without merit. First, plaintiff complains that the Secretary failed to analyze his claim in light of the requirement set forth in Rules 201.00(f) and 202.00(f), that in order to find that an individual closely approaching retirement age has skills transferable to light or sedentary work "there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." Plaintiff notes that the vocational expert estimated that plaintiff would need three to six months training to go from his machinist job to the sedentary clerking jobs. ▮ The ALJ rejected this assertion, holding that he was "not bound to evaluate this claim within the rules ... set forth in Appendix 2." Joint Appendix at 136. The ALJ is correct in this regard. Pursuant to the district court's remand, the ALJ was directed that the grid is inapplicable to this case. Rules 201.00 and 202.00, in contrast to § 404.1563(d) discussed above, are found in Appendix 2, *i.e.*, the "grid." As the ALJ did not rely on the grid in reaching his decision, the rules set forth therein are not applicable.

Finally, plaintiff argues that the magistrate's "selective review of the vocational testimony, as well as [the] failure to consider the evidence of record, was in contravention of [his] own, earlier mandate that [the Secretary] accord 'full consideration of all the relevant facts.'" Brief at 30. We are somewhat at a loss to understand this argument that the district court could somehow violate its remand order to the Secretary. As the Secretary asserts, "[h]aving written the orders initially and after remand, Magistrate Hooe surely knew what he meant the first time and did not ignore his own instructions."

### III.

Accordingly, the judgment of the district court is REVERSED and this action is REMANDED with instructions that it be further remanded to the Secretary for a finding as to whether plaintiff's skills are highly marketable.

---

4. The ALJ also determined that plaintiff's acquired skills included "above-average form and spacial perception" and the vocational expert testified that plaintiff's skills include "manual and finger dexterity." These abilities, however, are aptitudes and not skills. *See Weaver v. Secretary of Health and Human Services*, 722 F.2d 310, 311–12 (6th Cir.1983); *Podedworny, supra*, 745 F.2d at 220. Accordingly, on remand, the Secretary cannot rely on these abilities in determining whether plaintiff possesses highly marketable skills transferable to sedentary work.