# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3254

_____

| | | |
|---|---|---|
| Duane Fines, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | South Dakota. |
| Kenneth S. Apfel,[1] Commissioner of | * | |
| Social Security, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: March 11, 1998
Filed:  July 24, 1998

_____

Before BEAM and HEANEY, Circuit Judges, and WATERS,[2] District Judge.

_____

BEAM, Circuit Judge.

Duane Fines appeals the district court's affirmance of the denial of Social Security disability benefits.  We affirm.

_____

[1]Kenneth S. Apfel has been appointed Commissioner of the Social Security Administration and is substituted as appellee.   See Fed. R. App. P. 43.

[2]The Honorable Franklin H. Waters, United States District Judge for the Western District of Arkansas, sitting by designation.

## I. BACKGROUND

Fines is sixty years old. He was employed for more than thirty years as a truck driver. He has an eighth-grade education and suffers from back and knee pain.

At the hearing, Fines testified that his work as a city delivery truck driver generally involved lifting up to 100 pounds. He testified that he loaded and unloaded trucks and delivered freight all day. He estimated that he could presently lift no more than a bag of groceries. His activities include golf, mowing the lawn (with frequent breaks), and doing the dishes. He is unable to sit for more than thirty minutes, but can drive a car. He testified that he has problems remembering things, and asserts that he has a possible learning disability.

The medical evidence shows that Fines has a history of back and knee pain and has mild degenerative changes in his spine. He was examined and tested by a psychologist, who found that his I.Q. was in the "bright normal" range, although his memory was found to be in the "low average" range.

A vocational expert who also testified at the hearing characterized Fines's former work as a truck driver as semiskilled and stated that Fines had acquired transferable work skills from that employment. He stated that there were light and sedentary jobs in the national economy that a person with Fines's impairments and experience could perform. These jobs included check cashier, gaming cashier, time keeper, telephone answering service operator, automobile service station attendant, sales clerk, park aide, and recreational facilities aide.

The ALJ found that, although Fines had a severe impairment, he did not have an impairment that met the listing of presumptively disabling conditions found in Appendix 1 to Subpart P of 20 C.F.R. Part 404 ("the Listings"). The ALJ then found that Fines was unable to return to work as a truck driver, but that he had the residual functional

capacity to perform light and sedentary work, limited by a restriction on prolonged sitting. He found that Fines had transferable skills and could perform various semiskilled light and sedentary jobs that exist in significant numbers in the national economy. He therefore concluded that Fines was not disabled within the meaning of the Social Security Act. The Appeals Council affirmed the decision, as did the district court.

On appeal, Fines argues, among other things, that his job as a delivery truck driver was unskilled, and he thus acquired no transferable skills from that job.

## II.    DISCUSSION

Our task on appeal is to determine whether the Commissioner's decision is supported by substantial evidence in the record as a whole. See Siemers v. Shalala, 47 F.3d 299, 301 (8th Cir. 1995). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind might find it adequate to support the conclusion. See Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993).

To be entitled to disability benefits, Fines must establish a physical impairment lasting at least one year that prevents him from engaging in any gainful activity. See Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997). The Commissioner must determine: (1) whether the claimant is presently engaged in a "substantial gainful activity;" (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. See id.

The ALJ relied on the testimony of the vocational expert to find that Fines had acquired skills as a truck driver that he could transfer to other jobs in the national economy. This method of determining the existence of transferable skills is explicitly allowed by 20 C.F.R. § 404.1566(e). See Stout v. Shalala, 988 F.2d 853, 854 (8th Cir. 1993). Moreover, the ALJ's conclusion in this regard is bolstered by reference to the Dictionary of Occupational Titles (DOT), a Labor Department guide to job ability levels that has been approved for use in Social Security cases. See 20 C.F.R. § 404.1566(d)(1); see also Porch v. Chater, 115 F.3d 567, 571 (8th Cir. 1997). The DOT is the Commissioner's primary source of reliable job information. See 20 C.F.R. § 404.1566(d)(1). The Commissioner uses the DOT to classify occupations as skilled, semiskilled or unskilled. See 20 C.F.R. § 404.1569.

In the DOT, each job is assigned a number that reflects the job's specific vocational preparation time (SVP), i.e., how long it generally takes to learn the job. See United States Dep't of Labor, Employment and Training Admin., Dictionary of Occupational Titles, Vol. II, Appendix C at 1009. An SVP level of "three" indicates that a job requires more than one month and up to three months of training; while an SVP level of "four" would require more than three months and up to six months of training. See id. at 1009. Unskilled work, on the other hand, requires less than thirty days training. 20 C.F.R. § 404.1569(a); 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00. Unskilled work corresponds to an SVP of one or two in the DOT. See DOT at 1009.

The vocational expert testified that Fines prior work would be classified as "Truck Driver, Heavy" in the DOT. That job has an SVP level of four. See id. at 918. All of the other jobs mentioned by the vocational expert have an SVP of either three or four. See id. at 929 (automobile-service-station attendant— SVP 3);183 (gambling cashier—SVP 4); 183 (check cashier—SVP 3); 187-88 (timekeeper—SVP 3); 207 (telephone-answering-service operator—SVP 3); 231 (sales clerk—SVP 3);251 (recreation-facility attendant—SVP 3). Thus, we find no support for Fines's contention that his former work as a truck driver was unskilled.

Accordingly, we find substantial evidence to support the ALJ's finding that Fines acquired skills in his former semiskilled job as a truck driver that he can transfer to other semiskilled jobs in the national economy. We have considered Fines's other arguments and find them lacking in merit.

## III.    CONCLUSION

The order of the district court is affirmed.

HEANEY, Circuit Judge.

In my view, the ALJ erred by determining that "eye-hand-foot coordination, mathematics, collection of money, use of a radio, and some light maintenance" constitute "skills" under the Social Security Act and by failing to make findings as to whether Fines' kills are highly marketable. Accordingly, I dissent.

The majority correctly points out that a vocational expert may be used "in determining . . . whether work skills can be used in other work and the specific occupations in which they can be used." 20 C.F.R. § 404.1566(e). The majority provides no support, however, for the proposition that a vocational expert is capable of determining what qualifies as work skills under the Act.

Fines was fifty-seven-years old at the time of the adverse decision, he had completed the eighth grade, and worked delivering freight in the city. At his administrative hearing, Fines described his duties: "I just unloaded trucks in the morning, then I'd load my truck and deliver all day. Then I'd pick up people that were shipping stuff back out, and then I'd unload that into the trucks that were going out on the road. And that's just what I did basically every day." (Admin. R. at 33.)

In an attempt to clarify the concepts of "skills" and "transferability of skills" in disability determinations, the Social Security Administration (Administration) issued Social Security Ruling 82-41. (See Appellant's Addendum at 18.) The Administration defined "skill" as

> knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.

Id. at 18-19 (emphasis added). "Transferability" is defined as "applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." Id. at 19. The Administration addressed the determination of whether a job is semiskilled and whether skills are transferable to other jobs, stating:

> The regulations['] definition of semiskilled work in regulations sections 404.1568(b) and 416.968(b) states that semiskilled jobs "may require alertness and close attention . . . coordination and dexterity . . . as when hands or feet must be moved quickly to do repetitive tasks." These descriptive terms are not intended, however, to illustrate types of skills, in and of themselves. The terms describe worker traits (aptitudes or abilities) rather than acquired work skills.

Id.

In my view, "eye-hand-foot coordination, mathematics, collection of money, use of a radio, and some light maintenance" are more appropriately classified as aptitudes or abilities.[3] Consequently, the ALJ erred as a matter of law and should be reversed.

Even if Fines acquired transferable work skills, the ALJ erred by failing to make findings as to whether Fines' skills are highly marketable. The regulations state:

> [A]dvanced age (55 or over) is the point where age significantly affects a person's ability to do substantial gainful activity. If you are severely impaired and of advanced age and you cannot do medium work (see § 404.1567(c)), you may not be able to work unless you have skills that can be used in (transferred to) less demanding jobs which exist in significant numbers in the national economy.

20 C.F.R. § 404.1563(d). Given the applicability of § 404.1563(d), the disallowance of Fines' disability benefits can be sustained only upon a finding that Fines' skills are highly marketable. See Varley v. Secretary of Health & Human Services, 820 F.2d 777, 781 (6th Cir. 1987) (quoting Tom v. Heckler, 779 F.2d 1250, 1256 (7th Cir. 1985) ("The language is unmistakably clear. Absent a finding that a claimant who is close to retirement age has acquired skills which are also highly marketable, the regulations do not permit a finding of transferability.") (internal quotation marks omitted)) (citing Renner v. Heckler, 786 F.2d 1421, 1424-25 (9th Cir. 1986) (per curiam)); see also Emory v. Sullivan, 936 F.2d 1092, 1094-95 (10th Cir. 1991); Pineault v. Secretary of Health & Human Services, 848 F.2d 9, 11 (1st Cir. 1988) (per curiam). The ALJ's failure to make findings with regard to the marketability of Fines' skills constitutes reversible error.

For the reasons stated above, I would reverse.

---

[3]While "light maintenance" presents the closest case for a finding of "skill," the ALJ's finding that Fines could perform light maintenance is not supported by substantial evidence in the record.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.