# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1722

_____

| | | |
|---|---|---|
| Danny C. Kerns, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Kenneth S. Apfel, Commissioner of | * | |
| Social Security, | * | |
| | * | |
| Appellee. | | |

_____

Submitted: September 22, 1998
Filed: November 16, 1998

_____

Before BEAM, LAY and LOKEN, Circuit Judges.

_____

LAY, Circuit Judge.


Danny C. Kerns ("Kerns") appeals the judgment of the district court affirming the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits under the Social Security Act. Kerns contends that: (1) the Commissioner erred by failing to determine whether Kerns' skills were highly marketable; (2) the Commissioner erred in concluding that Kerns' subjective complaints were not credible; and (3) substantial evidence does not support the Commissioner's finding that Kerns has the residual functional capacity to perform the

full range of sedentary work.  For the reasons set forth below, we reverse and remand with instructions that the Commissioner determine whether Kerns' skills are highly marketable.

## I.  Background

Kerns applied for disability insurance benefits on February 1, 1994, claiming he became disabled on December 31, 1993, from Paget's disease[1] of the right hip.   His application was denied both initially and on reconsideration.  Kerns appealed the decision to an Administrative Law Judge ("ALJ") and a hearing was held on November 7, 1995.[2]

Kerns testified that he has a high school education plus two years of college and has worked as an embalmer and funeral director for the last 15 to 30 years.  He testified that since 1985, he worked at a funeral home where he conducted funerals, lifted caskets, and handled accounts payable and accounts receivable.  Kerns also stated that he received his only formal bookkeeping training from an accounting class he took in high school.  He claimed his disease renders him unable to work because it causes constant pain, interferes with his sleep and ability to concentrate, causes irritability, and prevents him from sitting or standing for long periods of time.

The vocational expert ("VE")  testified that Kerns' skills in accounts receivable and accounts payable could be transferred to a variety of sedentary accounting clerk positions without significant vocational adjustment because the work settings, tools,

---

[1]Paget's disease is a "generalized skeletal disease, frequently familial, of older persons in which bone resorption and formation are both increased, leading to thickening and softening of bones . . . and bending of weight-bearing bones." Stedman's Medical Dictionary, 501 (26th ed. 1995).

[2]Kerns was age 61 at the time of his hearing.

-2-

and processes involved in accounting clerk positions would be similar to those of Kerns' former position. The VE went on to note that 14, 480 such positions existed in the State of Missouri, with 4,400 in the Kansas City area.

After the hearing, the ALJ determined that Kerns was not disabled and denied him all disability benefits. The ALJ found that Kerns' testimony and subjective complaints were not credible based on Kerns' descriptions of his typical daily activities[3] and the lack of medical evidence to support his physical complaints. Relying on the VE's testimony, the ALJ found that although Kerns was unable to return to his previous work as a funeral director, he possessed transferable skills and retained the residual functional capacity to perform sedentary work.

Kerns appealed the ALJ's decision to an administrative appeals council. The Appeals Council adopted the ALJ's findings that Kerns' testimony and subjective complaints were not credible and found that he retains the residual functional capacity for sedentary work. In addressing the transferability of Kerns' skills, the Appeals Council rejected the need to determine whether Kerns' accounting skills are "highly marketable," stating that Kerns' skills are transferable because "no significant vocational adjustment would be required" for Kerns to perform accounting clerk positions. Appeals Council decision at 4. After finding that Kerns' skills were transferable, the Appeals Council then applied Rule 201.07 of 20 C.F.R. Part 404, Subpart P, Appendix 2, Table I, which directed a finding that Kerns was not disabled.

---

[3]Kerns testified that his typical daily activities include swimming, household chores, preparing lunch for his wife, carving wooden birds, napping, and visiting friends.

On April 7, 1997, Kerns sought judicial review of the Appeals Council's denial of benefits in district court.[4]  The district court,[5] in an unreported decision, denied Kerns' motion for summary judgment and affirmed the Commissioner's denial of disability benefits.  The  district court found substantial evidence on the record as a whole to support the Commissioner's finding that Kerns has the residual functional capacity to perform sedentary positions.  The district court did not, however, address the issue of the transferability or marketability of Kerns' accounting skills.  Kerns now appeals the district court's decision.  We reverse.

## II. Discussion
### A.

The burden of establishing a compensable disability under the Social Security Act is initially on a claimant, who must prove that he or she has a physical or mental impairment lasting at least one year that renders him or her unable to engage in any substantial gainful activity.  42 U.S.C. § 423(d)(1)(A) (1994); Fines v. Apfel, 149 F.3d 893, 894 (8th Cir. 1998).  Disability is determined by the oft-repeated application of a five-step sequential analysis that is codified at 20 C.F.R. §  404.1520 (1998).[6]

---

[4]The Appeals Council's decision is the final decision of the Commissioner. Hereinafter, we will call the Appeals Council's decision the "Commissioner."

[5]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

[6]The Eighth Circuit has summarized this analysis:

The Commissioner must determine: (1) whether the claimant is presently engaged in "substantial gainful activity;" (2) whether the claimant has a severe impairment--one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the

It is not disputed Kerns satisfied his burden of proof under the first four steps of the analysis. The Commissioner conceded that Kerns was unable to return to his former position as funeral director. Thus, the burden of proof shifted to the Commissioner at step five to prove that Kerns could perform other jobs available in the national economy. The issue before us is whether the Commissioner applied the proper legal standard under step five and whether substantial evidence supports his finding under step five that Kerns is not disabled. We hold that the Commissioner applied the incorrect legal standard.

B.

The Commissioner must consider a claimant's residual functional capacity, age, education, and past work experience to prove that a claimant can perform other work available in the national economy. 20 C.F.R. § 404.1520(f)(1). The way in which a claimant's age affects this determination is set forth in 20 C.F.R. § 404.1563 (1998). The regulation imposes a progressively more stringent burden on the Commissioner before he can deny disability benefits as claimants become older. See 20 C.F.R. 404.1563; Preslar v. Secretary of Health & Human Servs., 14 F.3d 1107, 1111 (6th Cir. 1994). For claimants under age 50, age is not considered to seriously affect their ability to adapt to a new job. 20 C.F.R. § 404.1563(b). For claimants age 50-54, the Commissioner must consider that age may affect their ability to adapt to a new job. Id. § 404.1563(c). For claimants of "advanced age" (55 or over) the regulation states:

claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Fines, 149 F.3d at 895.

-5-

(d)  Person of advanced age.  We consider that advanced age (55 or over) is the point where age significantly affects a person's ability to do substantial gainful activity.  If you are severely impaired and of advanced age and you cannot do medium work (see § 404.1567(c)), you may not be able to work unless you have skills that can be used in (transferred to) less demanding jobs which exist in significant numbers in the national economy.

20 C.F.R. § 404.1563(d).

Thus, the regulation requires the Commissioner to prove that a claimant's skills are transferable to other available positions before denying disability benefits to claimants that are age 55 or older.  To prove transferability, the regulations further provide that "[i]n order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." 20 C.F.R. Part 404, Subpart P, App. 2, § 201.00(f).

In denying Kerns disability benefits, the Commissioner considered the transferability of Kerns' accounting skills by applying the standard set forth immediately above.  The ALJ specifically asked the VE whether "significant vocational adjustment" would be required of Kerns in accounting clerk positions.  Tr. at 39.  The VE testified that work settings, tools, equipment, and work processes would be similar for accounting clerk positions and Kerns' former position.  Likewise, the Commissioner relied on this testimony in his decision to find Kerns' skills transferable, thereby denying him benefits.

Kerns argues, however, that the Commissioner's analysis should not have ended here.  Kerns was 61 years old at the time of his hearing, an age which is defined by social security  regulations as "close to retirement age." 20 C.F.R. § 404.1563(d).  For claimants close to retirement age, the regulation provides:  "If you are close to

retirement age (60-64) and have a severe impairment, we will not consider you able to adjust to sedentary or light work unless you have skills which are *highly marketable*." 20 C.F.R. § 404.1563(d) (emphasis added). Therefore, Kerns maintains, the Commissioner was required to determine whether Kerns' accounting skills are "highly marketable" before he considered them transferable and denied Kerns benefits. Kerns maintains that his accounting skills are not highly marketable and thus, he is disabled.

The Commissioner maintains that "if a claimant's skills are transferable with very little, if any, vocational adjustment, the Social Security Administration will consider such skills ‹highly marketable' under 20 C.F.R. § 404.1563(d)." Appellee's Br. at 22; see also Schmidt v. Callahan, 995 F.Supp. 869, 888 (N.D. Ill. 1998) ("[H]ighly marketable skills simply requires very little, if any, vocational adjustment . . . in terms of work processes, work setting, or the industry.") (citations and internal quotations omitted). The Commissioner essentially contends that the test applied to determine the transferability of skills for claimants over age 55 is the same test that is applied to determine whether the skills of claimants age 60-64 are highly marketable.[7]

Consideration of the term "highly marketable" is an issue of first impression in this court.[8] Our task is made more difficult by the lack of any express definition of the

---

[7]The Commissioner cites Social Security Ruling 82-41 and Rule 202.00(f) of 20 C.F.R. Part 404, Subpart P, Appendix 2, in his brief in support of his argument that the level of vocational adjustment required is the proper standard to apply to determine whether claimants aged 60-64 possess transferable skills. Rule 202.00(f) and SSR 82-41 are inapplicable to this case, however, because they address how to determine whether the skills of claimants age 60-64 are transferable to *light work*. Any reliance on them would be misplaced because this case involves a claimant who is limited to only *sedentary work*.

[8]Although no majority opinion has considered the issue, Judge Heaney briefly addressed it in his dissent in Fines v. Apfel, 149 F.3d 893, 896 (8th Cir. 1998) (Heaney, J., dissenting). In Fines, Judge Heaney stated that an ALJ erred by failing

term in the regulations. Several other circuits, however, have interpreted the term and uniformly held that the Commissioner must consider the marketability of a claimant's skills when determining whether a claimant close to retirement age possesses transferable skills. <u>See</u> <u>Preslar v. Secretary of Health & Human Servs.</u>, 14 F.3d 1107, 1111-13 (6th Cir. 1994); <u>Emory v. Sullivan</u>, 936 F.2d 1092, 1094-95 (10th Cir. 1991); <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1279 (9th Cir. 1990); <u>Pineault v. Secretary of Health & Human Servs.</u>, 848 F.2d 9, 11 (1st Cir. 1988) (per curiam); <u>Varley v. Secretary of Health & Human Servs.</u>, 820 F.2d 777, 781-82 (6th Cir. 1987); <u>Renner v. Heckler</u>, 786 F.2d 1421, 1424-25 (9th Cir. 1986) (per curiam); <u>Tom v. Heckler</u>, 779 F.2d 1250, 1256-57 (7th Cir. 1985). We find their reasoning persuasive.

First, although the Commissioner correctly asserts that statutory definitions and social security regulations provide that disability is to be evaluated in terms of a

---

to make findings regarding the marketability of a 60-year-old claimant's skills. <u>Id.</u> (citing <u>Varley v. Secretary of Health & Human Servs.</u>, 820 F.2d 777, 781 (6th Cir. 1987) (citations omitted)).

claimant's ability to perform jobs rather than on his or her ability to obtain them, 42 U.S.C. § 423(d)(2)(A) (1994);[9] 20 C.F.R. § 404.1566 (c) (1998),[10] the regulations also

---

[9] 42 U.S.C. § 423(d)(2)(A) provides, in pertinent part:

> (A) An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id.

[10] 20 C.F.R. § 404.1566(c) provides:

> (c) *Inability to obtain work.* We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of--
>
> (1) Your inability to get work;
> (2) Lack of work in your local area;
> (3) The hiring practices of employers;
> (4) Technological changes in the industry in which you have worked;
> (5) Cyclical economic conditions;
> (6) No job openings for you;
> (7) You would not actually be hired to do work you could otherwise do; or
> (8) You do not wish to do a particular type of work.

Id.

recognize the effect that age has on a person's ability to compete with other job applicants.  Preslar, 14 F.3d at 1111; Tom, 779 F.2d at 1257 n.11.  In the regulation defining the use of age as a vocational factor, the Commissioner specifically states: "'Age' refers to how old  you are (your chronological age) and the extent to which your age affects your ability to adapt to a new work situation and to do work *in competition with others*."  20 C.F.R. § 404.1563(a) (emphasis added).  "[T]his section recognizes a direct relationship between age and the likelihood of employment.  As claimants age, the Secretary must acknowledge that it becomes increasingly difficult to adapt to new work environments and to compete with younger, healthier, similarly-skilled workers."  Preslar, 14 F.3d at 1111; see Tom, 779 F.2d at 1257 n.11.

Second, the argument that "highly marketable" skills and transferable skills are synonymous is untenable upon examination of the structure of the regulations. The burden imposed on the Commissioner by the regulations grows increasingly higher as a claimant's age grows older. The language of § 404.1563(d) is absolutely clear that a higher burden is demanded for claimants approaching retirement age. Such claimants will not be considered "able to adjust to sedentary or light work *unless [they] have skills which are highly marketable*." 20 C.F.R. § 404.1563(d) (emphasis added). In the absence of a finding that the skills of a claimant close to retirement age are highly marketable, those skills cannot be found transferable. Preslar, 14 F.3d at 1112-13; Emory, 936 F.2d at 1094-95; Terry, 903 F.2d at 1279; Pineault , 848 F.2d at 11; Varley, 820 F.2d at 781-82; Renner, 786 F.2d at 1424-25; Tom, 779 F.2d at 1256-57. If the term "highly marketable" were defined by the same "vocational adjustment" standard used to determine transferability for claimants age 55 and over, as the Commissioner contends, the term would be meaningless. Other circuits have not adopted such an illogical interpretation of the regulations, and neither will this court.

As the Sixth Circuit explained in Preslar, "[i]t is evident that 'highly marketable' skills are something more than 'transferable' skills. Claimants age 55 and over, including those close to retirement age, must possess skills which transfer easily to other occupations. The 'highly marketable' requirement, however, only applies to those age 60-64." Preslar, 14 F.3d at 1111. The structure of the regulation clearly recognizes "that advancing age becomes an increasingly impenetrable barrier to obtaining employment." Id. The Sixth Circuit has also noted that requiring a finding of marketability for claimants close to retirement age "is intuitively reasonable, in that it reflects the reality that older persons, who do not possess highly marketable skills, will find it difficult to obtain any employment." Varley, 820 F.2d at 782.

The First, Seventh, Ninth, and Tenth Circuits interpret the regulation similarly. The Ninth Circuit states: "That marketability means something more than transferability is evident from the structure of the regulations. The regulations are

-11-

designed to reflect the greater vocational difficulties of people close to retirement age, and they do so through five year gradations which recognize progressive difficulties." Renner, 786 F.2d at 1424-25. The Tenth Circuit also recognizes that the regulation's structure "reflects that as a claimant grows older, his age will progressively offset his acquired skills so that by the time he is close to retirement age, unless his skills are highly marketable, he may not be able to obtain any employment." Emory, 936 F.2d at 1094.

In Pineault, the First Circuit agreed, holding that "[w]ithout a finding that claimant's skills were 'highly marketable' as opposed to just 'transferable,' the vocational disadvantage of claimant's advanced age might not be offset by the existence of transferable skills." Pineault, 848 F.2d at 11. Finally, the Seventh Circuit expounds that "the Secretary has nevertheless recognized that there is a direct relationship between age and the likelihood of employment . . . and that the advantage of having acquired (through past employment) certain skills or training may no longer offset the vocational disadvantage of age as a claimant becomes older." Tom, 779 F.2d at 1257 n.11. Thus, it appears overwhelmingly evident to other courts passing upon the issue, and to this court, that 20 C.F.R. § 404.1563(d) requires something more than a mere determination of transferability for claimants approaching retirement age.

### III.  Conclusion

Kerns was close to retirement age at the time of his hearing. Therefore, the Commissioner was required to find that Kerns' skills were highly marketable before he could find that Kerns had transferable skills and deny him benefits. Neither the ALJ nor the Commissioner considered the marketability of Kerns' skills; they found them transferable by considering only the level of vocational adjustment required.

We are satisfied under the authorities discussed that the ALJ and the Commissioner applied the wrong legal standard. Even if Kerns' skills were

transferable because little vocational adjustment would be required for him to perform accounting clerk positions, the Commissioner erred by failing to make any findings regarding whether Kerns' skills were highly marketable. The absence of such findings forecloses the possibility that the Commissioner's decision was supported by substantial evidence on the record as a whole, and it constitutes reversible error. As such, we need not address Kerns' additional arguments. Accordingly, we reverse the judgment of the district court with instructions to remand to the Commissioner to determine whether Kerns' skills are highly marketable.

Judgment vacated and remanded to the Commissioner for further consideration in accord with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.