**Christine SULLIVAN, Plaintiff,**

v.

**William A. HALTER** [1]**, Acting Commissioner of Social Security, Defendant.**

**No. 3–00–CV–90107.**

United States District Court,
S.D. Iowa,
Davenport Division.

March 12, 2001.

Michael Depree, Bowman & Depree, Davenport, IA, for plaintiff.

1. William A. Halter became the Acting Commissioner of Social Security on January 20, 2001. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure [Rule 43(c)(2) of the Federal Rules of Appellate Procedure]; William A. Halter should be substituted, therefore, for Commissioner Kenneth S. Apfel as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Inga Bumbary-Langston, United States Attorney, Des Moines, IA, for defendant.

### ORDER

PRATT, District Judge.

Plaintiff, Christine Sullivan, filed a Complaint in this Court on June 28, 2000, seeking review of the Commissioner's decision to deny her claim for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). For the reasons set out herein, the decision of the Commissioner is reversed.

Plaintiff filed her applications for benefits on June 10, 1998. Tr. at 94–96. After the applications were denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge. A hearing was held before Administrative Law Judge Andrew T. Palestini (ALJ) on June 14, 1999. Tr. at 41–71. The ALJ issued a Notice of Decision— Unfavorable on August 31, 1999. Tr. at 12–30. The decision was affirmed by the Appeals Council of the Social Security Administration on June 19, 2000. Tr. at 7–8. The Complaint was filed in this Court on June 28, 2000. After the Complaint was answered, and after Plaintiff filed her brief, the Commissioner moved to remand for additional vocational expert testimony on the issue of Plaintiff's transferable skills. In the opinion of the Commissioner, the burden of proof had not been met at step five of the sequential evaluation. Plaintiff resisted arguing that substantial evidence on the record as a whole supports a reversal and an award of benefits. The Court agrees with Plaintiff.

Many of the facts in this case are not in dispute. Plaintiff, at the time of the ALJ's decision, was a 52 year old woman who's past relevant work was a grade school music teacher. Her severe impairments are total deafness in the right ear, partial deafness in the left ear, dry corneas and dysthymia. The ALJ found, and nobody disputes, that Plaintiff does not meet or equal a listed impairment. The ALJ found that Plaintiff is unable to do her past relevant work, but that she has transferable skills which can be used in the semi-skilled job of Library Clerk, Talking Books. The following description for this job is from the Dictionary of Occupational Titles (DOT):

> Selects talking books for mailing to blind library patrons: Compares borrower's written request with list or chart of available titles. Selects books or materials, such as large type or braille volumes, tape cassettes, and open reel tape talking books, following borrower's request, or selects substitute titles, following such criteria as age, education, interest, and sex of borrower. Obtains books or materials from shelves. Types address label to prepare books or materials for mailing. May type records, such as material or issue cards. May receive and inspect talking books returned to library [BRAILLE–AND–TALKING BOOKS CLERK (library) ].

DOT code 209.387–026.

Before testifying, the vocational expert prepared a past relevant work summary on which, under the column headed "Acquired Skills", the following are listed. "Evaluates students. Plays and/or sings to demonstrate. Teaches, using technical knowledge. Order, store & inventory music & supplies. Apply musical theories & techniques to direct vocal groups." Tr. at 374. The Dictionary of Occupational Titles describes the job of Music Teacher:

> Teaches individuals or groups instrumental or vocal music in public or private school: Plans daily classroom work based on teaching outline pre-

pared for course of study to meet curriculum requirements. Evaluates students' interests, aptitudes, temperament, and individual characteristics to determine suitable instrument for beginner. Sings or plays instrument to demonstrate musical scales, tones, and rhythm. Instructs students in music theory, harmony, score and sight reading, composition, music appreciation, and provides individual or group vocal and instrumental lessons using technical knowledge, aesthetic appreciation, and prescribed teaching techniques. Conducts group rehearsals and instructs and coaches members in their individual parts, in fundamentals of musicianship, and ensemble performance. Critiques performance to identify errors and reinforce correct techniques. Leads orchestra and choral groups in regular and special performances for school program, community activities, concerts, and festivals. Meets with parents of student to resolve student problem. May accompany students on field trips to musical performances. May order, store, and inventory musical instruments, music, and supplies. May teach students with disabilities. May be required to have certification from state. May be designated Teacher, Instrumental (education); Teacher, Vocal (education).

DOT code 152.021–010.

The job of Library Clerk, Talking Books was the only job to which the vocational expert could point suitable under the limitations in the ALJ's hypothetical question. All other jobs, both skilled and unskilled, were precluded due to Plaintiff's severe hearing limitations. Tr. at 67–68. When asked if the job of Library Clerk, Talking Books would require the use of a telephone, the vocational expert testified that it would but that a phone with amplification or some other adaptation (Tr. at 69) could be provided by the employer as an accommodation. The vocational expert did not know how many such special phones were in place in libraries. Tr. at 70.

■ The Court has carefully read this record. There is no evidence therein that Plaintiff's past work gave her any skills whatsoever that she could use as a library clerk. Transferability is defined as applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs. *Fines v. Apfel,* 149 F.3d 893, 896 (8th Cir.1998) (Heaney, J., dissenting) *citing* Social Security Ruling 82–41. The vocational expert did not explain what skills Plaintiff acquired in her work as a music teacher which would transfer to a job as a Library Clerk, Talking Books.

If the issue of transferability of skills were the only concern, the Court would agree with the Commissioner that a remand is in order for further questions to the vocational expert on this point. There is another problem, however, which makes a remand a futile gesture. The vocational expert testified that a Library Clerk, Talking Books needs to use a telephone, and that special accommodation for a specially equipped telephone would need to be made in order for Plaintiff to do that type of work.

Although the vocational expert did not explicitly mention the Americans With Disabilities Act, reasonable accommodation is a concept basic to that statute. In *Eback v. Chater,* 94 F.3d 410, 412 (8th Cir.1996), the Court wrote: "The Associate Commissioner of Social Security issued a statement that the ADA and the disability provisions of the Social Security Act have different purposes and have no direct relationship to each other." Whether or how an employer might be willing, or required, to alter job duties to suit the limitations of

a specific individual is not relevant because Social Security's "assessment must be based on broad vocational patterns … rather than on any individual employer's practices." *Id.* quoting the Associate Commissioner.

■ In the case at bar, it was the testimony of the vocational expert that the job of Library Clerk, Taking Books could only be done by a person with Plaintiff's impairments and limitations if employers were willing to make special accommodation of providing a telephone capable of being used by a hearing impaired individual. The job of Library Clerk, Talking Books, therefore, does not satisfy the Commissioner's burden of proving that jobs exist that Plaintiff is capable of performing.

The vocational expert was asked, and was unable to provide examples of any other type of work that Plaintiff is able to do. A remand to take additional evidence, therefore, would only delay the receipt of the benefits to which Plaintiff is clearly entitled.

### CONCLUSION AND DECISION

The Court holds that Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court finds that the evidence in this record is transparently one sided against the Commissioner's decision. *See Bradley v. Bowen,* 660 F.Supp. 276, 279 (W.D.Ark. 1987). The medical and vocational evidence establish that Plaintiff does not have the residual functional capacity to work either at her past relevant work, or any other work in the national economy. A remand to take additional evidence would only delay the receipt of benefits to which Plaintiff is clearly entitled. Therefore, reversal with an award of benefits is the appropriate remedy. *Parsons v. Heckler,* 739 F.2d 1334, 1341 (8th Cir.1984).

Defendant's motion to remand the case to take further evidence is denied. **This cause is remanded to the Commissioner for computation and payment of benefits.** The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993) and LR 54.2(b).

IT IS SO ORDERED.