# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2728

_____

Kathleen Moad,                              *
                                            *
    Plaintiff - Appellant,          *
                                            *   Appeal from the United States
v.                                          *   District Court for the
                                            *   Southern District of Iowa.
Larry Massanari, Acting Commissioner        *
of Social Security,[1]                      *
                                            *
    Defendant - Appellee.           *

_____

Submitted: April 13, 2001

Filed: August 14, 2001

_____

Before McMILLIAN, LOKEN, and HANSEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

    Fifty-four-year-old Katherine Moad applied for Social Security disability benefits in May 1996, alleging a combination of disabling physical impairments -- carpal tunnel syndrome in the right hand, ulnar nerve impairment in the right arm, and arthritis in the left hand, lower back, and left hip. After an administrative hearing, the Commissioner's administrative law judge ("ALJ") denied the application, finding that Moad was able

_____

[1]Acting Commissioner Massanari is substituted as appellee pursuant to Rule 43(c) of the Federal Rules of Appellate Procedure.

to perform her past relevant work as the general relief director for Lucas County, Iowa. Moad sought judicial review of the adverse agency decision and now appeals the district court's[2] judgment upholding that decision. She argues that the ALJ misclassified her past relevant work, ignored medical evidence in evaluating her functional limitations, and improperly discredited her subjective complaints of disabling pain. Agreeing with the district court that substantial evidence on the record as a whole supports the Commissioner's decision, we affirm.

## I.

Moad worked as a legal secretary for over twenty years. She developed pain and tingling in her right hand in the late 1980's. In September 1992 surgery, Dr. Donald Reagan performed right carpal, ulnar, and cubital tunnel releases. Moad returned to work as a legal secretary, but constant typing caused renewed pain in her hands, arms, shoulders, and neck. Dr. Reagan temporarily restricted her typing in the fall of 1993, and she stopped working as a legal secretary in early 1994. Moad's hands and arms improved considerably after she stopped work, but pain returned in July 1994 as a result of her gardening activities. Dr. Reagan prescribed increased exercise, anti-inflammatory medications, a tennis elbow band, and a wrist splint.

In January 1995, Moad began working twenty hours a week as the general relief director for Lucas County, a job that included serving as receptionist for the Iowa Department of Human Services at that location. In November, she complained to Dr. Reagan of numbness in her hands and increasing pain in her arms, shoulders, and neck. He again prescribed anti-inflammatory medications, a tennis elbow band, and a wrist splint. When Moad returned in January 1996, Dr. Reagan noted that her hands and arms had improved, but she continued to complain of pain in the shoulder, neck, and

---

[2]The HONORABLE CHARLES R. WOLLE, Untied States District Judge for the Southern District of Iowa.

back areas.  Dr. Reagan referred her to Dr. Denhart for a physiatry consult, but Moad never visited Dr. Denhart.  She quit working for Lucas County in May 1996 because of constant pain in her hands, shoulders, and neck, a progressive arthritic condition in her hip and lower back, and daily headaches.  No treating physician advised her to cease working.

In May 1996, Dr. Louis Schneider examined Moad for pain in her left hip, neck, and shoulders.  Dr. Schneider found Moad to be "neurologically intact" and diagnosed her as having left hip pain, neck and shoulder pain, and status post carpal tunnel repair.  When Moad returned in September, Dr. Schneider's prescribed medications had greatly improved her shoulder pain, but she complained of continuing low back and left hip pain, which Dr. Schneider believed was caused by degenerative arthritis.  After two other physicians examined whether Moad's hip pain stemmed from a hip or a lower back condition, Dr. Daniel McGuire performed a lower back laminectomy in January 1997.  Post-operation x-rays appeared acceptable, but Moad did not return to Dr. McGuire, believing that he had "nicked" a nerve during the surgery.  Instead, she visited the University of Nebraska Medical Center in February 1997, where a variety of tests suggested "mild disc degeneration" and "moderate degenerative facet disease" in her lower back.

At the administrative hearing in September 1997, Moad described her position with Lucas County and testified that she quit that job because of intense pain in her hands, neck, shoulders, back, and hip.  She explained that "I couldn't sit any longer." She testified that she was taking ibuprofen, Extra Strength Tylenol, and occasionally Darvocet for pain.  She described the 1992 carpal tunnel surgery as "completely unsuccessful.  I'm dropping things.  My hands go to sleep."  She testified that her hip pain went away after the January 1997 back surgery, but "it's come back again and I think I'm worse than I was before the surgery."  However, she had not returned to any of her treating physicians since that surgery.  Moad opined that she can walk 50 to 60 feet, stand or sit for 10 to 15 minutes, lift 10 pounds, and has trouble climbing stairs,

kneeling, crawling, stooping, and squatting. Her daily activities include preparing meals, doing dishes and laundry, caring for her eleven-year-old granddaughter, reading, and driving to church and the grocery store but not out of town.

After listening to Moad's testimony and reviewing the documentary evidence, a vocational expert ("VE") classified her position with Lucas County as a social service worker job falling within DICTIONARY OF OCCUPATIONAL TITLES ("DOT") category 195.107-010. In response to a hypothetical assuming impairments the ALJ later found Moad to possess, the VE opined that she had the residual functional capacity to perform the Lucas County job and had acquired transferable skills that could be used in other jobs that she had the functional capacity to perform, such as case aide, pre-parolee counseling aide, coordinator for volunteer services, and social services information clerk.

At the conclusion of the administrative hearing, the ALJ ordered additional medical examinations because Moad had not been examined since recovering from back surgery. Dr. Lon Brewer diagnosed Moad with residuals of lumbar laminectomy, residuals of right carpal tunnel syndrome, arthritis of the left metacarpal joint on the first finger, and referred pain to the right upper back. Noting her problems of pain and numbness, Dr. Brewer opined that Moad cannot lift and carry "with confidence"; can sit or stand only 20 minutes at a time; cannot stoop, climb, or crawl; has "greatly diminished" ability to handle objects because of arthritis in her hands and wrists; and "cannot work an 8 hour day." On the other hand, Dr. Michael Stein diagnosed Moad as having chronic pain syndrome "without any objective signs." Dr. Stein opined that Moad is limited to lifting and carrying ten to fifteen pounds because of pain that has no objective medical support; has no limitation in sitting; can stand and walk one to four hours a day; and can occasionally climb, balance, stoop, crouch, kneel, and crawl. Dr. Stein concluded: "I feel this patient needs to be in a chronic pain center to see if she can get maximum treatment and perhaps back to work force with minimum restrictions if any at all."

The ALJ found that Moad can lift 20 pounds occasionally and 10 pounds repeatedly, stand 30 minutes and sit 60 minutes at a time, and walk four to five blocks. The ALJ found a combination of severe impairments -- low back and hip pain, degenerative changes in the spine, carpal tunnel syndrome, and arthritis in her thumbs -- that require Moad to avoid repetitive gripping, gross or fine manipulations with her hands, and bending, stooping, twisting, squatting, kneeling, crawling, climbing, or pushing and pulling. Partially rejecting Moad's claim of disabling pain, the ALJ found that her hand impairments prevent her from performing her past relevant work as a legal secretary, but that she has the residual functional capacity ("RFC") to perform her past relevant work for Lucas County. Accordingly, the ALJ concluded that she is not disabled. See Bowen v. Yuckert, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1520(e).

## II.

Our review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence on the record as a whole. Fines v. Apfel, 149 F.3d 893, 894 (8th Cir. 1998). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind might find it adequate to support the conclusion. "We must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but we may not reverse merely because substantial evidence exists for the opposite decision." Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996).

Moad first argues that the ALJ incorrectly classified her work for Lucas County. Moad testified that her duties as general relief director included interviewing residents to determine eligibility for public assistance; keeping records regarding indigent individuals sent to the University of Iowa Hospitals and Clinics for free care; corresponding with doctors, attorneys, employers, and the county board; developing a budget; and preparing vouchers to be approved and paid by the board of supervisors.

-5-

She also answered the phone and took messages for Department of Human Services employees who worked at the same location. Based on this job description, the VE classified the position in the DOT social service worker category. Moad contends that this classification was erroneous because she did not have a degree in social work and was not licensed to practice social work in Iowa. While DOT classifications are sometimes important, we fail to see the relevance in this case. Moad was not disabled if, as the ALJ found, she could perform "[t]he actual functional demands and job duties of a particular past relevant job." Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996), quoting Social Security Ruling 82-61.

Moad next argues that her work for Lucas County was not past relevant work because she worked part-time in the position less than eighteen months, and the DOT suggests that it takes two-to-four years to learn the position of social service worker. A job is past relevant work if it was "done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity." 20 C.F.R. § 1565(a). Here, there is no evidence suggesting that Moad failed to learn her job as general relief director or did not competently perform any of her duties in that position. Thus, substantial evidence supports the ALJ's finding that this was past relevant work.

Moad next argues that the ALJ ignored much of the relevant medical evidence in determining her RFC and that the ALJ's findings did not sufficiently limit the use of her hands. The ALJ found severe impairments in Moad's hands, wrists, hip, and lower back. But the pre-hearing medical evidence from her treating physicians did not clarify the extent to which these physical impairments were work-disabling. (1) Dr. Reagan opined in January 1996 -- while Moad was working for Lucas County -- that her hands and arms were improved and she should see Dr. Denhart for a physiatry consult about her shoulder and neck pain, which Dr. Reagan suspected was myofascial pain. Moad did not return to Dr. Reagan and never saw Dr. Denhart, yet she testified that her carpal tunnel surgery was "completely unsuccessful." (2) Moad testified that she quit the Lucas County position in May 1996 because of intense pain, but there is no

contemporaneous medical evidence supporting that testimony. (3) Moad was examined by four doctors in late 1996 about her hip pain before Dr. McGuire performed a laminectomy. His post-operation notes were favorable, but Moad never saw him again and testified at the hearing that this surgery was unsuccessful. (4) Moad was examined at the University of Nebraska Medical Center in February 1997 but never returned for evaluation of her functional capabilities.

Faced with this ambiguous medical evidence, the ALJ ordered two post-hearing medical examinations. The results were less than conclusive. Dr. Brewer accepted Moad's complaints of disabling pain and opined that she cannot work an eight-hour day. Dr. Stein noted her complaints of pain but found no objective medical support and suggested that Moad could return to work with minimal or no restriction after treatment at a chronic pain center. Having carefully reviewed the entire administrative record, we conclude that substantial medical evidence supports the ALJ's RFC findings. Not all the medical evidence pointed in that direction, but what did was more than sufficient. For example, almost a year after Moad's January 1997 back surgery, Dr. Stein saw "no limitation" on her capacity to sit during a workday and opined that she could stand one to four hours in a workday and had excellent strength in her lower extremities.

Finally, Moad argues that the ALJ erred in discrediting her subjective complaints of pain. Under Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), an ALJ must look at five factors when determining this credibility issue: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." "[T]he question is not whether [Moad] suffers any pain; it is whether she is fully credible when she claims that [the pain is so great] that it prevents her from engaging in her prior work." Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987). Here, the ALJ referred repeatedly to Moad's complaints of disabling pain and contrasted those complaints with the medical evidence and her daily activities. The

ALJ found Moad's complaints of pain credible only to the extent consistent with his RFC findings. In other words, pain from her physical impairments would not prevent her from performing her past relevant work for Lucas County. We note that Moad had not sought treatment from any physicians in the seven months prior to the administrative hearing. See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("failure to seek medical assistance for her alleged physical . . . impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits"). Viewing the record as a whole, we conclude that substantial evidence on the record as a whole supports this credibility finding.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.