**Michael P. RANGEL, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**No. 00–CV–10138–BC.**

United States District Court, E.D. Michigan, Northern Division.

April 10, 2001.

Lewis M. Seward, Seward, Tally, Bay City, MI, for plaintiff.

William L. Woodard, United States Attorney's Office, Detroit, MI, for defendant.

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LAWSON, District Judge.

Plaintiff has filed a complaint seeking review of an agency decision denying his application for Supplemental Security Income (SSI) benefits. Both the plaintiff and the defendant agree that the findings of the Administrative Law Judge (ALJ) are not supported by substantial evidence on the whole record. The plaintiff claims that the record demonstrates an entitlement to benefits. The defendant contends that a remand for further proceedings is the appropriate disposition of this case. Because there are factual issues that remain unresolved, and because substantial evidence in the administrative record does not support the ALJ's finding that plaintiff is not disabled, the Court will grant the defendant's motion to reverse the findings of the Commissioner and remand for further proceedings.

### I.

Plaintiff filed a claim for SSI benefits claiming that he was disabled from all gainful employment as a result of chronic dizziness and cervical spinal stenosis with bilateral, upper-extremity radiculopathy. Plaintiff had previously worked on a seasonal basis as a laborer for Monitor Sugar Company, and also held jobs as a groundskeeper for a cemetery, a machine operator, an assembly line worker for a furnace company, and a forklift truck driver. He filed his claim on March 26, 1997, when he was fifty years old, alleging that he became unable to work on December 8, 1996 due to his dizziness and upper extremity problems.

After the claim was denied initially and on reconsideration, ALJ John A. LaFalce conducted a *de novo* hearing on April 16, 1998. On June 26, 1998, ALJ LaFalce found that the plaintiff was not disabled. ALJ LaFalce employed the five-step sequential analysis prescribed by the Commissioner, 20 C.F.R. § 404.1520, concluding that the plaintiff had not engaged in substantial gainful activity since December 8, 1996 (step one); plaintiff suffered from impairments including an old cervical compression fracture with spinal stenosis and possible nerve impingement, dizziness, and alcohol abuse disorder, which were "severe" (step two); there was no evidence that plaintiff's impairments or combination of impairments met or equaled one of the impairments listed in the regulations (step three); and plaintiff could not perform his previous work as a production machine operator, laborer, fence company worker or cemetery laborer (step four).

At step five, ALJ LaFalce found that the plaintiff had the residual functional capacity to perform a limited range of light work and that there was a significant number of those jobs in the national and regional economy. The ALJ found, therefore, that the plaintiff was not disabled and denied benefits.

The Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner on March 16, 2000. Plaintiff filed a complaint in this

court seeking review of the decision on April 14, 2000.

The case was referred to United States District Magistrate Judge Charles E. Binder pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). The plaintiff filed a motion for summary judgment seeking a remand to the Commission for an award of benefits. The defendant, Social Security Commissioner, filed a motion for summary judgment to reverse the Commissioner and remand for further proceedings. The Magistrate Judge filed a Report and Recommendation on November 1, 2000 recommending that the plaintiff's motion be denied, the defendant's motion be granted, and the matter be remanded to the Commission for further proceedings. Plaintiff filed timely objections to the Report and Recommendation, to which the defendant responded and the plaintiff has replied. The matter is now before the Court for *de novo* review.

## II.

The plaintiff's challenges are directed to the findings and conclusions of the ALJ that the plaintiff can perform a limited range of light work and therefore is not disabled. Plaintiff contends that proper application of the medical vocational guidelines compels a finding of disability, that the ALJ failed to give preclusive weight to the opinions of plaintiff's treating physicians, and that the ALJ made findings in bad faith which are not only unsupported by the administrative record, but that the

record actually contradicts several of the statements made by the ALJ.

The defendant concedes that the administrative record does not support the conclusions of nondisability, but contends that a remand for benefits is not warranted because of several, unreconciled factual issues. The defendant points to a subsequent finding of disability at the state agency level,[1] contradictory opinions by the plaintiff's treating physicians, the failure of the ALJ to consider a psychological evaluation of the plaintiff, and, assuming that the plaintiff establishes disability, the need to determine an onset date.

■ The plaintiff has the burden to prove that he is disabled and therefore entitled to benefits. *Boyes v. Sec'y of Health and Human Servs.*, 46 F.3d 510, 512 (6th Cir.1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir.1990). Under 42 U.S.C. § 1382c(a)(3)(A) & (B), a person is disabled if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" and the impairment is so severe that the person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Further, "a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

---

1. The social security system established by Congress is comprised of an administrative level at which claims are adjudicated, and a judicial level at which administrative decisions are reviewed by the federal courts solely to determine if they are within statutory authority and are not arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct.

885, 107 L.Ed.2d 967 (1990). At the administrative level, the state agency, pursuant to authority delegated by the Social Security Administration, makes the initial determination and processes the first appeal. *See Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

■ To determine disability, the Commissioner has prescribed the five-step sequential process noted above and set forth in 20 C.F.R. § 404.1520. However, if the plaintiff has satisfied his burden through the first four steps in the analytical process, the burden shifts to the Commissioner to establish that the plaintiff possesses the residual functional capacity to perform other substantial gainful activity. *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987). *See also Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980). "To meet this burden, there must be a finding supported by substantial evidence that plaintiff has the vocational qualifications to perform specific jobs." *Varley*, 820 F.2d at 779 (internal quotes and citations omitted).

■ The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla of evidence. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1053 (6th Cir.1983) (citations omitted). The reviewing court must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.1997). This Court may not base its decision on a single piece of evidence and disregard other pertinent evidence when evaluating whether substantial evidence in the record exists. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir.1978). Thus, where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir.1989). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (en banc) (internal quotes and citations omitted). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

However, a substantiality of evidence evaluation does not permit a selective reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Id.* at 388 (internal quotes and citations omitted). *See also Laskowski v. Apfel*, 100 F.Supp.2d 474, 482 (E.D.Mich.2000).

The uncontroverted medical evidence from plaintiff's current and former treating physicians, Dr. Bautista and Dr. Tamez, establishes that plaintiff is suffering from benign positional vertigo. According to an excerpt from a medical text furnished as an exhibit by the plaintiff, this is a condition in which a person experiences dizziness or spatial disorientation when he or she lies on one ear or the other, or tips his or her head backward to look up. It is caused by degeneration of one of the structures of the inner ear; it is transitory, lasting several weeks or months, but with potential recurrence after the passage of months or years. The impact of this condition on plaintiff's ability to engage in gainful activity, by itself and in combination with plaintiff's other impairments, is contested by the parties.

The administrative record on this point is not clear, contrary to plaintiff's conten-

tion. The Magistrate Judge described those portions of the administrative record which contained medical opinions in apparent conflict. (*See* Report and Recommendation, pp. 14–15). For instance, the Magistrate Judge observed that the plaintiff had been diagnosed with benign positional vertigo and also exhibited normal neurological findings. One physician stated that the plaintiff was "unable to work" and also opined that he could lift ten pounds and sit up to eight hours at a time. Another doctor stated that the plaintiff should remain active.

The plaintiff argues that these findings are not contradictory, but rather fit neatly into a consistent, broad picture of a progressive impairment.

The administrative record demonstrates that plaintiff treated with two family practice doctors, Dr. M. David Bautista through February 1998, and Dr. Gary Tamez from that date forward because of a change in plaintiff's insurance coverage. These physicians referred plaintiff to various specialists, including Dr. John Buday; a neurologist, Dr. Scott Baker, an ear, nose and throat specialist; and Dr. Gerald Schell, a neurosurgeon. The plaintiff's primary physical problems consisted of his dizziness—benign positional vertigo—and impairment of his upper extremities due to radiculopathy caused by cervical spinal stenosis.

The administrative record contains a report of an emergency room visit by plaintiff on December 8, 1996 when plaintiff was intoxicated, fell, and struck his head on a curb. The admitting diagnosis included a possible closed head injury, but the discharge summary did not include a closed head injury in the differential diagnosis. Plaintiff followed up with his family doctor later that month at the Bay Medical Center and complained of occasional dizziness. He also saw Dr. F.C. Stevens at the same facility who followed plaintiff for possible joint problems (gout), which did not present any difficulty at the time. Plaintiff was referred to neurologist Dr. Buday, who wrote on *February 27, 1997 that* plaintiff suffered from "mild vestibular trauma." Dr. Buday also noted that plaintiff was "neurologically stable." However, plaintiff also complained of numbness in three fingers of each hand.

Plaintiff also saw Dr. Bautista in late January 1997 and complained of low back pain, which Dr. Bautista attributed to plaintiff's activity of "shoveling some heavy snow" two weeks earlier. Dr. Bautista evaluated plaintiff again in March 1997 at which time plaintiff complained again of dizziness, this time when he did "sit-ups four or five times a day." He had been taking Antivert then, and stated he enjoyed about one hour's worth of relief after taking the medication.

Plaintiff underwent physical therapy, and an April 30, 1997 discharge report states that plaintiff was cooperative and compliant, had improved in some areas such as cervical spine range of motion, but still experienced problems with recurring symptoms and recommended continuation of home exercises. In May 1997, Dr. Baker noted that plaintiff was "doing reasonably well with regard to his dizziness;" and he still experienced symptoms but testing yielded normal results. One negative, the Hallpyke Maneuver,[2] had been positive one month earlier.

---

**2.** The "Hallpyke Maneuver", as described in the excerpt from the anatomical text which plaintiff attached as Exhibit A to his objections to the Magistrate Judge's Report and Recommendation, is as follows: "The patient is first seated on an examining table; then with his head turned to the side, he quickly assumes the supine position with his head dependent over the end of the table. After a latent period of several seconds, severe verti-

By July 1997, Dr. Stevens was reporting that the plaintiff's benign positional vertigo continued and was brought on by "positional movement of the head." He also suffered from paresthesia in the left upper extremity. Dr. Stevens told plaintiff to "continue his limited activity," although the record at this point is not clear as to the extent of the limitations which Dr. Stevens was recommending. Dr. Bautista, however, wrote a letter dated July 8, 1997 in which he stated that plaintiff had benign positional vertigo, and that he experienced dizzy spells that were brought on occasionally by walking but more frequently when plaintiff was lying down. The dizzy spells caused a loss of balance. Dr. Bautista then offered his vocational opinions that the plaintiff was not suited to manual labor which included heavy lifting, walking at extreme heights, handling machinery, and driving a car. He also stated, "[a]t best he is perhaps able to perform desk work."

Almost two months later, Dr. Schell notes that plaintiff continued to have neck pain radiating to his arms, and that the cervical instability may require surgical intervention. Dr. Schell did not comment on plaintiff's benign positional vertigo until November 1997 when he again recommended surgery to address the neck and arm problems.

Finally, the administrative record contains medical examination reports which date from 1998, over one year after the claimed onset of disability date alleged by the plaintiff. Dr. Bautista's report, dated February 2, 1998, suggests that because plaintiff suffers from benign positional vertigo and cervical pain with radiculopathy, plaintiff is able to sit eight hours out of an eight hour workday but could only stand and walk for one hour each. He is limited to lifting ten pounds occasionally but could not use his hands and arms for any repetitive action. Dr. Bautista again recommended that plaintiff discontinue driving a car. Then, after responding to the specific questions regarding plaintiff's physical limitations noted above, Dr. Bautista offered the comment, "[u]nable to work secondary to severity of injury and problems with vertigo."

Dr. Tamez, who came on the scene around that time, signed a report on April 13, 1998 in which he opined that plaintiff could not even perform "sedentary work" because of upper extremity bilateral neuropathy and benign positional vertigo.

On April 16, 1998, plaintiff testified at his administrative hearing and was questioned by the ALJ about his physical capability. When asked if he could lift between 35 and 40 pounds, plaintiff responded, "I think I can. I never tried it though." He also said he could lift and carry a gallon of milk with one hand, but needed the support of both hands when he tried it on the other side.

The plaintiff contends that the administrative record, as described above, clearly demonstrates plaintiff's disability. This Court cannot agree. After conducting a *de novo* review of the administrative record, the Court reaches the unavoidable conclusion that the administrative record paints a murky picture, at best. The consequence of this finding is best explained by addressing each of plaintiff's objections to the Report and Recommendation and

---

go occurs, which is likely to last for 15 to 20 sec[onds] and is accompanied by rotary nystagmus. If the left ear is affected, the nystagmus is clockwise when the head is turned to the left; if the right ear, the nystagmus is counterclockwise. When the patient sits up, the response recurs, but the nystagmus is rotary in the reverse direction and is milder. The response fatigues, so that with immediate repetition of the test, the response is diminished."

his arguments in the motion for summary judgment in turn.

### III.

Plaintiff contends that proper application of the medical vocational guidelines results in plaintiff "gridding out." He points to 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.09 and 201.00(g). Section 201.09 deals with residual functional capacity under Table One, which applies to workers limited to sedentary work as a result of severe medically determinable impairments. That section states that a worker who is closely approaching advanced age (50 to 54 years old), with limited or less education, and with either unskilled or no previous work experience, is disabled. Section 201.00(g) states:

Individuals approaching advanced age (age 50–54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferrable skills, a finding of disability ordinarily obtains. However, recently completed education which provides for direct entry into sedentary work will preclude such a finding. For this age group, even a high school education or more (ordinarily completed in the remote past) would have little impact for effecting a vocational adjustment unless relevant work experience reflects use of such education.

20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(g).

The ALJ, however, applied § 202.10 in plaintiff's case. That section is taken from Table Two, which evaluates residual functional capacity limited to light work, and states that a worker who is closely approaching advanced age with limited or less education and unskilled or no previous work experience is *not* disabled. The difference between § 201.09 and 202.10, of course, is defined by the difference between sedentary work and light work. Sedentary work is defined by the regulations as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling or arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

It is not clear from the record that plaintiff's limitations place him in the sedentary work category. Although Dr. Bautista's February 1998 report limits plaintiff's lifting ability to 10 pounds "occasionally," Dr. Tamez' April 10, 1998 report states that plaintiff cannot even perform sedentary work. This contradiction,

of course, is not particularly material to the distinction between sedentary and light work. However, later in April 1998, plaintiff gave testimony from which it is reasonable to infer that he could lift in excess of 20 pounds at a time, although the evidence on this point is still equivocal.

The Court acknowledges the well-established general rule that a treating physician's opinion should be given greater weight than those opinions of consultative physicians who are hired for the purpose of litigation or who examine the claimant only once. *See Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 90 (6th Cir.1985); *Jones v. Sec'y of Health and Human Servs.*, 945 F.2d 1365, 1370 n. 7 (6th Cir.1991). Moreover, if a treating physician's opinion is not contradicted, complete deference must be given to it. *Walker v. Sec'y of Health and Human Servs.*, 980 F.2d 1066, 1070 (6th Cir.1992); *King v. Heckler*, 742 F.2d 968 (6th Cir. 1984). *See also Hardaway v. Sec'y of Health and Human Servs.*, 823 F.2d 922, 927 (6th Cir.1987) ("[t]he expert opinions of a treating physician as to the existence of a disability are binding on the factfinder unless contradicted by substantial evidence to the contrary.").

However, the Commissioner is *not* bound by the opinion of a treating physician, which may only be given "great weight" if it is supported by sufficient clinical findings consistent with the evidence. *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990). Further, a treater's opinion may be rejected if there is good reason to do so. *See Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir.1988). One good reason for rejecting a treating physician's opinion is when it is stated in legal terms as opposed to medical terms. For instance, in *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230,

1234–35 (6th Cir.1993), the Court found that the ALJ could properly reject a treating physician's opinion that the plaintiff was "unemployable." "Unemployable" is not necessarily equated to "disabled," the latter being a term of art which is defined, augmented and enriched by the statutes, regulations and Social Security rulings, in addition to the case law.

In this case, Dr. Bautista stated in July 1997 that the plaintiff could not do heavy work but was able "to perform desk work." The term "desk work" could be consistent with both light work and sedentary work. A year later, Dr. Bautista stated that plaintiff was unable to work, but described physical limitations consistent with sedentary work. Dr. Tamez stated that plaintiff was unable to perform any work, but his involvement with the plaintiff in April 1998, when he completed his report, was limited. It is not clear from the record, therefore, that the ALJ improperly rejected the opinions of the treating physicians, or that he applied the wrong section of the medical vocational guidelines.

Plaintiff also argues that the ALJ's decision is "[p]ermeated ... [with] outright lies...." Plaintiff's Brief in Support of Motion for Summary Judgment, p. 4. Although plaintiff's hyperbolic and *ad hominem* attack on the ALJ's integrity overstates the case and seriously undermines the persuasive force of plaintiff's argument, there are clearly portions of the ALJ's opinions in which he plainly got it wrong. For instance, the ALJ reported that the claimant owns an automobile and was never told by his physicians not to drive. However, plaintiff testified that he no longer drives because he gets dizzy, and Dr. Bautista "strongly advised" that plaintiff discontinue driving in two separate reports. The ALJ indicated that plaintiff failed to perform recommended remedial exercises, whereas the record indicates

that plaintiff was compliant with these recommendations. The ALJ stated that plaintiff had an alcohol addiction disorder and never obtained treatment for it. However, the record shows that plaintiff had both in-patient and out-patient therapy for alcohol abuse.

Although these obvious mistakes suggest carelessness in reviewing the record on the part of the ALJ, and they undermine the soundness of the ALJ's conclusions, they do not conclusively establish prevarication on the part of the ALJ, or an evil motive, as the plaintiff contends. These misstatements, however, coupled with the several inconsistencies in the administrative record, compel the conclusion that substantial evidence does not support the finding that plaintiff has the residual functional capacity to perform a limited range of light work.

## IV.

The Court agrees with the parties that the case must be remanded to the Commission. The Court must determine, therefore, whether the matter should be remanded to the Agency for further consideration, or whether a remand for an award of benefits is warranted. The plaintiff contends that proof of his disability is overwhelming and that all "essential" fact issues have been resolved by the evidence in the record. In *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171 (6th Cir.1994), the Court of Appeals held:

> If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.

*Id.* at 176.

In that case, the plaintiff had applied for Social Security disability insurance bene-fits on the basis of knee and wrist problems, numbness in the fingers of his right hand, high blood pressure, high cholesterol, a cancer surgery and depression. Benefits were denied on the basis of the testimony of a vocational expert who identified several thousand sedentary jobs that an individual with plaintiff's residual functional capacity could perform. The expert's opinion was based upon a hypothetical question that did not incorporate the plaintiff's obesity and emotional impairments. The district court determined that the hypothetical question was improper, and therefore the ALJ's denial of benefits was not based on substantial evidence. The district court also concluded that it was unable to remand for taking new and additional evidence because of the limitation contained in sentence six of 42 U.S.C. § 405(g) which conditions a remand on a showing of good cause. Rather, the district court remanded for an award of benefits. On appeal, the Court of Appeals agreed that sentence six of § 405(g) requires the Secretary to establish good cause as a prerequisite to a remand. However, a post-judgment remand for further proceedings is authorized under sentence four of § 405(g). *See Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

The Court of Appeals in *Faucher* agreed that the Commissioner's decision was not supported by substantial evidence, but concluded that a remand for benefits was inappropriate in that case. The Court reasoned that the record was incomplete because the correct hypothetical question was never posed to the vocational expert. The witness was never given an opportunity to respond to a question that incorporated not only plaintiff's physical impairments but also the severity of his emotional impairments, and the record

contained conflicting evidence on the severity of plaintiff's emotional impairments. The Court observed that the district court had acknowledged that "it was not known whether plaintiff might be capable of performing a significant number of jobs in the national economy that would accommodate his combined limitations." *Faucher*, 17 F.3d at 176. The Court concluded, therefore, that "the case must be remanded to the ALJ for further consideration of this issue." *Id.*

In *Mowery v. Heckler*, 771 F.2d 966 (6th Cir.1985), the plaintiff sought Social Security disability insurance benefits, which were denied at the agency level, and he did not prevail in the district court. He suffered from hypertension, headaches and dizziness, and aches and pains. He was forced to stop work as a construction laborer because of pain. He had worked several years earlier as a night watchman. His I.Q. was below-average. Psychological tests established that plaintiff was able to function only in construction and mining jobs, and an orthopedic examination showed that the plaintiff had limitation in movement which precluded that activity. The ALJ had denied benefits, concluding that plaintiff could perform light work, such as that of a night watchman, although there was evidence in the record that plaintiff had suffered a hearing loss and could only perform as a night watchman when assisted by his son and daughter. The Court of Appeals reversed the district court and remanded the case to the agency for an award of benefits. The Court held:

The court finds it unnecessary to remand the case to the Secretary for further evaluation. In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking.

*Id.* at 973.

■ In this case, the question becomes whether the record on the extent of the plaintiff's limitations is adequate to determine the extent of his residual functional capacity. This Court concludes that it is not. As noted above, there are statements in the record from both treating physicians and the plaintiff himself which can fairly be found as contradictory. These contradictions lead to the difficulty in determining the extent of plaintiff's exertional limitations, and, in turn, which tables in the medical vocational guidelines are applicable. Further, even assuming that the record establishes a disability, the date of onset is far from clear. The Magistrate Judge has conducted a thorough review of the record and identified evidence which conceivably conflicts with the conclusion that the plaintiff is disabled. This Court is not presently prepared to conclude that the record establishes overwhelming proof of plaintiff's disability, nor will the Court conduct a *de novo* evaluation of the evidence to make determinations of factual questions in the first instance. That task belongs to the Administrative Law Judge. Under the two-tiered system created by Congress in which the administrative agency processes the claim initially and the Court reviews the Agency decision for arbitrariness and capriciousness, *see Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990), the ALJ must first give full consideration to all of the evidence, resolve conflicts, take account of all current information including a subsequent finding of disability by the state agency, and rebalance the evidence in light of the applicable statutes and regulations.

## V.

The Court has made a *de novo* review of the administrative record and the entire

file in light of the plaintiff's objections, and concludes that the result reached by the Magistrate Judge in his Report and Recommendation is correct.

Accordingly, it is **ORDERED** that the plaintiff's Motion for Summary Judgment [dkt. # 12] is **DENIED.**

It is further **ORDERED** that the defendant's Motion for Summary Judgment [dkt. # 14] is **GRANTED.**

It is further **ORDERED** that the decision of the Commissioner's finding that the plaintiff is not disabled and denying benefits is **REVERSED,** and the matter is **REMANDED** to the Social Security Administration for further proceedings.